# Staunton.

## A. Z. LITZ v. EDNA S. HARMAN.

September 20, 1928.

The opinion states the case.

*George C. Peery* and *Sinnott, May & Leaman*, for the plaintiff in error.

*Wm. H. Werth*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

Edna S. Harman, plaintiff in the trial court, was struck while walking on the highway and seriously injured by an automobile owned by A. Z. Litz but then operated by his son, who at the time of the occurrence was just under twenty-one years of age. There were two jury trials. Upon the first trial the jury returned a verdict for the defendant, which the court set aside,

and then upon the second trial there was a verdict for the plaintiff, of which the defendant, Litz, is here complaining.

1. Referring to the first trial: There is a single assignment of error, and that is to the action of the court in setting aside the verdict and in refusing to enter final judgment thereon for the defendant.

The court at first refused to set aside the verdict upon the ground relied on, i. e., that it was contrary to the law and the evidence, but after the order had been entered, the plaintiff renewed her motion and assigned as another ground therefor, that during the trial one of the jurors had gone to the place of the accident for the purpose of making an inspection of the premises and taking a view of the scene; and that his report thereof to the other jurors improperly influenced and induced the verdict for the defendant. In support of this motion the affidavits of C. P. Harman, who was a son of the plaintiff, and Sam P. Hoover, one of the jurors, were filed. The defendant objected to the filing of these affidavits, but his objections were over-ruled and he excepted, and he then filed counter-affidavits of three jurors, R. E. French, E. T. Scott and E. R. Garst, the latter being the juror who had so viewed the premises. Upon a consideration of these affidavits, the trial court sustained the motion, set aside the verdict and directed a new trial. This action of the trial court is the only error assigned affecting the first trial.

These affidavits, omitting the formal parts, follow:

The affidavit of Harman, the plaintiff's son, states that he testified as a witness and attended the trial; that the evidence introduced by the parties to the case was concluded in the afternoon of Saturday, May —, 1927, and that the jury was then adjourned until

Monday following to hear the instructions of the court and arguments of counsel, and that the facts stated below were not known to plaintiff or her counsel until June 4th; that during the intervening Sunday, E. R. Garst, one of the jurymen sitting in the case, went to the place of the accident involved for the purpose of making an inspection and taking a view of the scene and of the positions of witnesses who had testified in the case, and such other facts as he could thereby ascertain and deemed material by him; and that upon Garst's arrival at the place of accident he did then and there make said inspection; that after the jury retired to consider of their verdict in said case on Monday, and in the jury room while they were considering the same, and while the jury were nearly equally divided in opinion as between a verdict for plaintiff or defendant, said E. R. Garst, without ever having otherwise disclosed said facts, told the other members of the jury of his visit to the place of the accident on Sunday, and of the view and inspection he had made there, and of the personal knowledge he had thus obtained of facts involved in controversy in the case and deemed material by him; and that said Garst then argued and contended with other members of the jury that under the evidence he had thus acquired and disclosed, there ought to be a verdict for defendant; and that the verdict returned was largely influenced and induced by said statements of said Garst."

The juror, Sam P. Hoover, made this affidavit:

"(a) That he was one of the jurymen empaneled and sworn in the Circuit Court of Tazewell county at the May term, 1927, to hear and try the law case of *Edna S. Harman* v. *A. Z. Litz*; that the case was submitted to the jury on Monday, May —, and the jury retired to its room to consider of its verdict; that after some

time it was ascertained that the jury could not agree upon a verdict as between plaintiff and defendant in said case, and being at the time of the opinion among themselves that agreement was probably hopeless, it was decided to report a disagreement to the court, and the jury returned into court and so reported; that the trial judge admonished the jury of the desirability of arriving at a verdict if reasonably possible without the surrender of fixed conscientious convictions, and the jury then returned to make another effort to agree.

"(b) That upon returning to its room one of the members of the jury, to-wit, E. R. Garst, informed the jury that during Sunday preceding and intervening during the trial and while he was a juryman in the case, he had gone to the scene of the accident involved and viewed the ground and various locations as he understood the locations involved to be fixed by the evidence before him, and with special relation to the positions of witnesses as he had understood them to be fixed by the evidence; that said Garst also informed the jury of the conclusions arrived at by him from said inspection of the ground, and urged upon the other members of the jury the facts he had thus claimed to ascertain, and also the conclusions he had come to from those facts, as to the verdict that should be returned by the jury in the case.

"That it was after this that the jury finally agreed."

The substance of the counter-affidavits introduced by the defendant are:

"R. E. French, after being duly sworn, deposes and says:

"I was a member of the jury in the trial of the case of *Edna S. Harman* v. *A. Z. Litz* in Tazewell Circuit Court.

"Upon the first vote by the jury two of us, S. P. Hoover and myself, voted for giving some damage,

and the other five members of the jury voted in favor of defendant and against giving any damage. I was in favor of allowing small damage of about $400.00 or $500.00. We reported our disagreement to the court, and the court sent us back to further consider the case. We then went over the map filed by R. E. Meade and the evidence that had been introduced before us and agreed upon a verdict in favor of the defendant.

"One of the jurors, I think Mr. Garst, spoke of driving down to the place where the accident occurred, but I do not remember what he said about his trip there. I do say that whatever statement he may have made about going there on Sunday did not in any way influence me or influence my verdict in the case. I gave my verdict for the defendant after full consideration of the evidence, and only the evidence, that was introduced before us in court.

"I reached the conclusion from the evidence that Mrs. Harman must have started across the road just before the accident and was struck as she went across."

"E. T. Scott, after being duly sworn, deposes and says:

"I was a member of the jury in the trial of the case of *Edna S. Harman* v. *A. Z. Litz* in the Circuit Court of Tazewell county, Virginia. On the first vote on the case by the jury, five voted for the defendant and against giving any damage, and two of the jury, S. P. Hoover and R. E. French, voted for giving small damage—he told me something like four or five hundred dollars. We reported our disagreement to the court and the court sent us back to the jury room. After going back to the jury room the jury went over and discussed the map introduced in evidence by R. E. Meade, and Mr. Hoover and Mr. French then agreed with the other five members of the jury upon a verdict in favor of the defendant.

"I do not remember of Mr. E. L. Garst making any statement in the jury room about going down to the place of the accident on Sunday.

"If he did make any such statement it did not in any way influence me or influence my verdict in the case.".

"E. R. Garst, after being duly sworn, deposes and says:

"I was a member of the jury in the trial of the case of *Edna S. Harman* v. *A. Z. Litz*, at the May term, 1927, of the Circuit Court of Tazewell county. I live at North Tazewell, Virginia, and am employed by Tazewell Motor Company, whose place of business is in the town of Tazewell, Virginia. The introduction of evidence in the said case was completed on Saturday; and the case was adjourned over until the following Monday. On the afternoon of the Sunday which intervened, I, in company with my sister-in-law, Miss Rose Poteet, took an automobile drive down to or near Pounding Mill, Virginia, returning that same afternoon. The road traveled was along that portion of the State highway where the accident involved in said case occurred. When we passed over the detour and got back into the State highway just west of the barricade, we traveled a short distance to the west and stopped our car at a point on the right side of the road going west directly in front of and opposite to the small residence situated on the left side of the road going west, the location of said residence being shown on the map filed with the evidence of R. E. Meade, and indicated by the rectangle with the letters 'Res' written therein, said point where we stopped being seventy-five feet west of the barricade, according to said map. Neither of us got out of the car at this place where we stopped. We remained in the car at this point long enough for me to observe more than one car moving

along the highway to the west and also to observe more then one car coming from the west along the said highway. I observed that a car coming to the east was out of sight for some hundred feet just west of the place of the accident, owing to a sag in the road and that it did not come into view until it reached a point east of the place of the accident; and that a man in the State highway at any point between the spring shown on the map filed by R. E. Meade and the point directly in front of and opposite to said residence could not see a car coming from the west throughout a distance of a quarter of a mile to the west of the place of said accident.

"I did not talk to any one there about the case. I took this drive and stopped at the place indicated without any suggestion on the part of either party to the said case, or any one in any way connected with the case, and so far as I know without their having any knowledge of the fact. I did not see anything wrong in doing what I did.

"After stopping at the point indicated and remaining there in the car a short time we continued our drive westward down to or near Pounding Mill, and returned by the same route. We did not on our return stop at the place of accident or anywhere near the place of accident.

"When the jury went to the jury room on Monday, prior to the taking of the first vote of the jury, I do not think I mentioned to any member of the jury the fact that I saw the place of the accident on the preceding Sunday. On the first vote of the jury five were for the defendant and two of the jury—Mr. Sam Hoover and Mr. R. E. French—were for the plaintiff. After we reported a disagreement to the court and were sent

back to the jury room to further consider the case, Mr. Hoover stated that he did not fully understand about the location of the road at and about the place of the accident, and apparently sought an explanation from me, and I thereupon explained to him the facts shown by the map as I understood them.

"I did not urge my views or conclusions upon him or upon any other member of the jury as to the verdict that should be returned in the case.

"I made no statement to Mr. Hoover or to any other member of the jury as to the position of any witness on the hill or as to what he or they saw.

"I did not discuss this case with any one outside of the jury room.

"My verdict in the case would have been the same as it was had I not gone to the place on Sunday."

In support of the view that this constitutes reversible error, the defendant relies upon the perfectly well established rule that the affidavits of jurors are not generally admissible to impeach their own verdict. That this is true must be accepted in this State, and we do not mean by anything which is here said to impinge upon or weaken this just and salutary rule in the slightest degree. The reasons therefor seem to us obvious and are fully set out in the Virginia cases, which are in accord with the general rule elsewhere. *Thompson's Case*, 8 Gratt. (49 Va.) 638; *Ball* v. *Commonwealth*, 14 Gratt. (55 Va) 613; *Elam* v. *Commercial Bank*, 86 Va. 96, 9 S. E. 498; *Taylor* v. *Commonwealth*, 90 Va. 117, 17 S. E. 812; *Street* v. *Broaddus*, 96 Va. 823, 32 S. E. 466.

This rule, however, does not dispose of this case. It does not prohibit the proof of an unauthorized view or of other improper conduct of a juror during the time of the trial, outside of the jury room, the consequential

impressions on his own mind thereby created, which were communicated by him to the other jurymen without the knowledge of the parties and for the purpose of influencing their verdict.

The general rule is thus stated in 20 R. C. L., section 43, page 260: "The fact that an unauthorized view or inspection is made by the jury or by a juror during the progress of a civil or criminal trial, while improper, is not ground for a new trial unless it appears that the verdict was affected thereby. But where the mere fact of an inspection, in view of the nature of the suit, is calculated to influence the jury to the prejudice of the unsuccessful party, it will be presumed that the knowledge so obtained was in fact prejudicial, and in the absence of evidence to the contrary a new trial will be granted."

In *Driscoll* v. *Gatcomb*, 112 Me. 289, 92 Atl. 39, L. R. A. 1915B, 702, it is held that the surreptitious inspection by a juror of a calf and a cow alleged to be its dam, in an action to recover possession of the calf, in which the question of its maternity was an important element, is ground for a new trial, although the juror stated that his decision was not influenced by his act. The later authorities are collected in a note to that case, L. R. A. 1915B, 703.

▮▮ There are many cases in which verdicts have been set aside in civil cases because of such improper view so made by a juror. There are also many in which such conduct is held to be immaterial. It depends, and properly depends, upon the circumstances of the particular case. No inexorable rule can be formulated. While in this case the action of the juror was casual, natural and not surreptitious, and there is no reason to believe that he intended improperly to affect his own judgment or to influence that of his fellow-jurors,

there seems to be fair reason for supposing that these
consequences resulted. He was violating no rule of
law or good conscience in taking the automobile ride
with his sister over the road on which the injury oc-
curred, and it was perfectly natural for him, when he
reached the scene, to observe it attentively. It would
doubtless have been impossible for him to have avoided
the conclusions thus influenced, if any, but if he had
stopped at this there would have been no just ground
for complaint. It appears, however, that thereafter in
conference, when two of the other jurors were in doubt,
or favored a verdict for the plaintiff, he brought the
knowledge, which he by his view of the locality thus
acquired, to their attention, and used his own knowledge
of the physical situation to discredit some of the wit-
nesses and thus induce the verdict for the defendant.
What he should have done would have been to submit
the information and the impressions which he had thus
almost inadvertently, we may say, gathered, to the
court and counsel on both sides, for then a view of the
premises by the entire jury might have been ordered,
or such other action taken in open court as might have
been deemed necessary for the preservation of the
rights of the litigants.

A very recent case involving a similar question is
*Frank* v. *Matthieson,* 115 Oregon 349, 236 Pac. 754.
There the appellate court held that the trial court
abused its discretion in ordering a new trial, because
the alleged misconduct of the juror in inspecting the
premises neither influenced his own verdict nor prej-
udiced the losing party. In that case it appeared
that he passed the building which he inspected fre-
quently, his inspection was casual, he did not com-
municate his views to the other jurors, and the manner
of construction of the building was not in issue.

██ The sound rule is the rule of reason. Much should be left to the trial judge, and unless he abuses his discretion, his judgment should conclude the matter on appeal.

There is much in the circumstances of this case to support the view that the verdict may have been improperly induced by the conduct of this juror. There is a sharp conflict in the testimony as to the precise location of the plaintiff on the highway just before she was injured and as to whether the car was then moving on the right or the wrong side of the road; so that the nature of the adjacent ground, the location of the hills and valleys, and the precise position of the witnesses who had testified became quite material in weighing their testimony.

██ Such is the respect which this court pays to the verdict of a jury that the trial courts should always be alert to see that the jurors are not subject to any unfair or improper influences, and that all of the testimony which tends to affect their conclusion shall be produced in open court. It follows that this court should uphold and not reverse a trial court upon such a debatable question, unless there has been a clear abuse of discretion.

Our conclusion, then, is that no reversible error was committed by the trial court judge in setting aside the verdict at the first trial because of the juror's unauthorized view of the premises and his communication of the results of his observation to the other jurors in the privacy of the jury room.

██ 2. Referring to the second trial: At the second trial of the case there was a verdict and judgment in favor of the plaintiff, which the trial court refused to disturb. The outstanding circumstances appear to be, that the defendant's automobile, driven by his son,

about twenty-one years of age, while occupied by the defendant's wife, daughter and another young lady, struck the plaintiff and seriously injured her. The plaintiff was walking east on the public highway, and the automobile was being driven in the same direction. For the plaintiff, the evidence tended to show that she was walking upon the left side of the highway in the direction in which she was going at the time she was struck, while the evidence introduced by the defendant tended to show that his son was driving on the right side of the highway, that he saw the plaintiff some distance ahead of him before he struck her, and that the cause of her injury was that she suddenly changed her course and walked over towards the right side of the highway, immediately in front of the approaching machine; that he veered the automobile further to the right as quickly and as far as possible, and that this sudden change of her course was the proximate cause of the plaintiff's injury. The evidence for the plaintiff, however, tends to show that the automobile was being driven on the left or wrong side of the highway, at a very high and illegal rate of speed; whereas the defendant claims that he was driving less than thirty-five miles an hour. Upon this general state of the evidence of course the verdict of the jury is conclusive, unless the trial court committed some error of law.

The defendant assigns numerous errors, but all except one center upon one proposition. It is contended that the driver of the automobile, the son of the defendant, was not his agent or servant, and hence that the defendant can in no event be held legally responsible for the plaintiff's injury. For this two cases are cited and relied upon. They are *Cohen* v. *Meador*, 119 Va. 429, 89 S. E. 876, and *Blair* v. *Broadwater*, 121 Va. 301, 93 S. E. 532, L. R. A. 1918a, 1011.

In each of these cases a father, the owner of the automobile, was relieved of liability for the alleged negligence of the driver of the automobile, which in one case was operated by a son over twenty-one years of age, and in the other by a daughter eighteen years of age. The rule established by these cases is thus expressed: "The relationship alone of father and son, or father and daughter, does not of itself impose liability upon the father for the negligent operation of his automobile, and such liability, when properly imposed, must result from the relation of master and servant or principal and agent." That is all that those cases can be fairly held to determine, and we do not wish to modify or weaken that rule, which, however difficult it may be to apply in particular cases, appears to be the universal rule in this country.

■ There is a wealth of authority on the general subject and much conflict. Out of these precedents, however, a rule supported by the better reason, and, as we believe, by the weight of authority, has emerged, which has come to be labeled as the "family purpose doctrine," as affecting liability for negligent injuries by automobiles while being used by members of the family.

It is thus expressed in 20 R. C. L., section 34, page 629: "The parent's liability for an injury caused by the negligent operation of his automobile, kept for family use, is much clearer in a case where the child was, at the time, driving with other members of the family than where he was driving alone, since the presence of other members of the family tends to show that the car was being used for the purpose for which it was intended, and that the operator was acting as the parent's servant. However, where a parent purchases an automobile for the use of his family, a child

using it for his own pleasure is held by the weight of authority to be the servant of his parent in doing so; and, if in the course of his travels he negligently manipulates the machine, the act is within the scope of his employment." *Griffin* v. *Russell*, 144 Ga. 275, 87 S. E. 10, Ann. Cas. 1917D, 994, L. R. A. 1916F, 216, and note; *Birch* v. *Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59 and note.

The uncontradicted evidence is that the defendant owned the automobile which he kept for family purposes; that they drove it out frequently; that they used it for pleasure as well as business. One witness said that he had never seen the defendant driving it; that he spent a great deal of his time away from home; that some of the defendant's children drove it; and that the defendant did not keep a hired chauffeur. The testimony of the son of the defendant, who was driving the car at the time, is thus summarized on this point in the petition for the writ of error: "That he was driving the car at the time of the accident and had been in the habit of driving the car; that some people who were at a camp near Tazewell wanted some groceries brought down there and asked his mother to bring them; and it was at her request that he took his mother and sister and got the groceries and drove down to the camp to deliver them, and on their return the accident happened; that the car was bought and maintained by his father partly for such errands; that at the time he was testifying he was twenty-two years old and at the time of the accident he lacked a few days of being twenty-one; that he had been down to camp near Tazewell to take some food to some girls there; that a boy by the name of Gillespie called up his mother and said that the people at the camp wanted some food and that his mother stated they would take

it down—that his mother got the food at one of the stores; that his father did not know that he was driving the car on that occasion, and that he was not on any errand or mission of any kind or business for his father."

It also appears that another of the defendant's daughters was at the camp to which the groceries had been so carried by her mother.

So much has been written on this "family purpose" doctrine that we think it only necessary to quote briefly and refer to some of the numerous annotations on the subject.

"The rule has been said to rest on the view that where a father provides an automobile for the purpose of furnishing members of his family with outdoor recreation, the use of the car for such purpose is within the scope of the father's business analogously to the furnishing of food and clothing or ministering to their health." Ann. Cas. 1917D, 1003, note.

*Boes* v. *Howell*, 24 N. M. 142, 173 Pac. 966, L. R. A. 1918F, 288, is thus interpreted in R. C. L. Supp. Vol. 3, 1094: "A distinction is drawn in some cases between instances where the child was accompanied by other members of the family, or was driving the car alone. In the former instance it has been held that the father was liable under the 'family purpose' doctrine, for an injury caused by it while it was being occupied and used with his express or implied permission by members of his family, who were being driven by one of his children; at least, the point was emphasized that the car was kept for and habitually used by the members of the family." *Van Blaricom* v. *Dodgson*, 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917F, 365; 5 A. L. R. 226.

In Ruling Case Law, Supp. Vol. 4, page 153, this is said as to the "family purpose" doctrine: "When the

head of a family supplies an automobile for the use and pleasure of the family, permitting the members thereof to use it at will, those members thus using the automobile become the agents of the head of the family, and each one using it, even for his sole personal pleasure, is carrying out the purpose for which the automobile is furnished, and is the agent or servant of the head of the family, so that the latter is liable for injuries resulting from negligence. This doctrine has been announced by the courts of Minnesota, Iowa, Georgia, Oklahoma, New Mexico, North Dakota, Wisconsin, Washington, Colorado, Montana, South Carolina and Tennessee; but application in its broadest sense has been refused in Arkansas, New York, Missouri, North Carolina, Maine, Alabama, Utah, New Jersey, Massachusetts, Virginia, Kansas, California, Ohio, Illinois, New Hampshire, Mississippi, and Michigan. *Norton* v. *Hall*, 49 Ark. 428, 232 S. W. 934, 19 A. L. R. 384; *Fullerton* v. *United States Casualty Co.*, 184 Ia. 219, 167 N. W. 700, 6 A. L. R. 367."

Among the later annotated cases are *Landry* v. *Richmond*, 45 R. I. 504, 124 Atl. 263, 32 A. L. R. 1504, and *Ritter, Admx.* v. *Hicks*, 102 W. Va. 541, 135 S. E. 601, 50 A. L. R. 1512, where this is said in the note: "Where at the time of an accident a car was being driven by the owner's son for the pleasure and convenience of the family, the son at the time being engaged in driving his mother and two sisters to a luncheon, the father is liable for the son's negligence, who drove the car under his father's general permission and for one of the purposes for which it was kept. *Gates* v. *Mader* (1925), 316 Ill. 313, 147 N. B. 241. The court further held that the question of the defendant's liability was not affected by the fact that his son was of adult age and worked and lived in a hospital, the son having come home the night before on his customary weekly visit."

■ The discussion might be prolonged and citations multiplied, but we shall content ourselves with saying that we agree with the judge of the trial court in holding that under the facts in this case the "family purpose" doctrine applies. The automobile was being used at the time by three members of the family of the defendant (wife, son and daughter), for the purpose for which it had been bought, under the implied authority of the defendant, so as to make his son, the driver of the machine, for the time being, his servant and agent. The doctrine of *respondeat superior* applies here under the conceded facts.

■ This conclusion disposes of the case, for the other exception relates to the admission of the testimony of a witness as to the excessive speed of the car, (which was sufficiently identified), when it was about a mile distant from and approaching the place of the injury. Upon the first trial this testimony was excluded and would doubtless have been also excluded on the second trial but for the fact that the defendant undertook to show affirmatively that the car was driven at a legal and moderate rate of speed not only just before the injury but during the entire journey. Whether this testimony should have been admitted on either trial because of remoteness in time and distance from the place of the injury may be the subject of difference of opinion, but its admission under the circumstances does not constitute reversible error, especially in view of the fact that another witness testified to the same facts, and to this testimony no exception was taken by the defendant. Such points rarely present any sufficient reason for reversal, and certainly do not justify reversal in this case.

While the court adopted the rule which we have approved as to the responsibility of this defendant for

the driver's negligence, if shown, it gave for the defendant instructions which were just as favorable as he could fairly ask for under the evidence. If the jury had credited the testimony introduced for the defendant, they would have found a verdict in his favor, upon the ground that the driver had not been guilty of any negligence, and that the proximate cause of the plaintiff's injury was her own negligence in suddenly changing her own course and walking from the place of safety to the place of danger. The legal propositions were properly decided, and the verdict is supported by the plaintiff's evidence.

*Affirmed.*