# Staunton

## M. T. OLIVER AND CLARENCE OLIVER, BY, ETC. V. JOHN ALBERT SIMMONS, BY, ETC.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*H. H. Watson* and *W. Moncure Gravatt,* for the plaintiffs in error.

*Paul H. Coleman,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action at law by notice of motion for judgment for damages for injuries sustained by John Albert Simmons, the plaintiff in the trial court, in a collision be-

tween a motorcycle, upon which he was riding on the rear seat, and an automobile which was being driven by Clarence Oliver.

The accident happened on June 7, 1931, in the afternoon, just outside of the city limits of Lynchburg. Clarence Oliver, the driver of the automobile, was eighteen years old and Albert Simmons, the infant plaintiff, was fourteen years old. The motorcycle was operated by Marvin Mason, its owner, who was eighteen years of age. The Simmons youth was a passenger on the motorcycle, having no mechanical or other control of its movements. Immediately preceding the accident the automobile was proceeding east along Campbell Avenue *en route* to Crewe, Va., where Oliver lived, and the motorcycle was being driven west along the same avenue. Each vehicle, at this time, was well on its side of the avenue and neither was going at an excessive rate of speed. Evans' filling station is located on Campbell avenue just above where Light street intersects with it. When the automobile had passed this intersection it made a left turn to cross the street and enter the filling station. The evidence shows that the automobile was being carefully driven and its speed in making the crossing was not in excess of five miles an hour. When it approached the filling station side of the street it came in collision with the motorcycle and Simmons' leg was caught between its bumper and the motor of the motorcycle and badly crushed. The boy was seriously and permanently injured.

The gravamen of the charge of negligence, upon the part of the driver of the automobile, is that he failed to give plainly visible indication of his intention to cross the street, by the statutory signal, and before turning to see that his contemplated movement could be made in safety. The testimony shows that Campbell avenue is straight in each direction from the point of the accident for a distance of 100 yards or more and that there was little traffic at the time so that there was nothing to obscure the vision of either of the principal participants in the accident.

██ We think that an analysis of the whole testimony impels the conclusion that there was a sufficient conflict, as to whether the signal for the left-hand turning and crossing of the street was given, certainly at such a distance from the turning point as would make such signal effective, for its submission to the jury, and that there was enough evidence to warrant the conclusion that Clarence Oliver was recreant to his duty to see that the turning and crossing movement could be made in safety. Indeed his own testimony convicts him of this. The verdict of the jury, therefore, is conclusive and is not to be disturbed so far as it affects the defendant, in the trial court, Clarence Oliver. The large question here is the contention of the plaintiff that there is liability upon M. T. Oliver, the father of Clarence, and the owner of the automobile, under what has come to be known as the "family purpose doctrine." It is alleged and urged that the car was owned, maintained and kept by M. T. Oliver, for family purposes and that it was being so used at the time of the accident.

This brings us to a statement of the facts relative to this feature of the case. M. T. Oliver, the owner of the car, is a railroad employee and spends some two-thirds of his time away from his home, which is at Crewe, Va. He and his son, Clarence, are the only members of his family who can drive a car. One key of the car is kept on the mantel of the living room. When M. T. Oliver is away the car is left in the charge of Mrs. Oliver. The testimony is uncontradicted that when Clarence wishes to use the car he has to have the permission to do so either from his father or his mother. On numerous occasions he had driven the car, when it was occupied by his parents, and sometimes when it was not so occupied, and on errands for the family. One of the young ladies, who accompanied him on the occasion of the accident, testified that she had ridden in the car with him when his parents were not present.

On the day of the accident M. T. Oliver was absent from home on one of his employment trips. Clarence informed

his mother that he was going down town but would be back in a few minutes. He got the keys from the mantel and took the car without his mother's permission. The following is his testimony on this feature of the case: "I did not have permission to drive my father's car at will and had to get consent from him or my mother when he was not at home. On this occasion I did not tell my mother or father that I was going to Lynchburg and did not ask permission to use the car. I was not on any mission of my father or mother or any member of the family on this trip to Lynchburg. I did not get permission from my mother to use the car that morning. I told her that I was going down town and would be back in a few minutes, but did not tell her I was going to use the car. * * * She did not say anything when I told her I was going off in the car." He did not return home as he had assured his mother he would do but fell in with a friend, Roy Jenkins, who proposed that they should go to see some girls. One of the girls wanted to go to Lynchburg to the closing exercises of a college there and in response to this the two young men accompanied by two girls drove off to Lynchburg. Clarence did not inform his mother of his going. The accident happened on their return trip as has already been detailed. The testimony of the young man's parents is in accord with his own as to his use of the car and as to the circumstances of its use on the particular occasion.

We are cited by the plaintiff's counsel to the case of *Litz* v. *Harman,* 151 Va. 363, 144 S. E. 477, 481, as controlling authority for their position that the case in judgment comes under the rule of "the family purpose doctrine." We do not think so. The facts of that case easily distinguish it from this. There the young son of the defendant drove his father's car at the instance of his mother, accompanied at the time, by his mother and his sister, whose purpose was to deliver some groceries at a camp at which another sister was one of the campers. The mother procured the groceries at one of the local stores. The car was bought and maintained by the father partly for such errands. A portion of the opinion in the case is: "The uncontradicted

evidence is that the defendant owned the automobile which he kept *for family purposes; * * *.*"

■ The late eminent Prentis, C. J., in delivering the opinion supports his conclusions, in part, by quoting from *Ruling Case Law,* Supp. vol. 4, p. 153: "When the head of a family supplies an automobile for the use and pleasure of the family, *permitting the members thereof to use it at will,* those members thus using the automobile become the agents of the head of the family, and each one using it, even for his sole personal pleasure, is carrying out the purpose for which the automobile is furnished, and is the agent or servant of the head of the family, so that the latter is liable for injuries resulting from negligence." (Italics supplied.)

■ We have no criticism of the conclusions of this court in the *Litz* v. *Harman Case,* but that is not this case. The facts are very different and the uncontradicted evidence here prevents the applicability of the "family purpose doctrine." The genesis of this doctrine is agency which is generally implied from the character of the usual use of the car by the particular member or members of the family. Agency here is negatived by the positive and unimpeached testimony that Clarence Oliver had no permission to use the car at will and that he could only do so by the express permission of his father or mother. He had neither. It is, however, suggested that the evidence tends to support the theory that he had' the implied permission of his mother to use the car on this occasion because his taking it from the garage was seen by her and she did not protest or forbid its use but it will be noted that he assured her that he was only going down town and would be back in a few moments. If there was implied permission he violated it by going off to Lynchburg on a pleasure trip of his own of which both of his parents were in ignorance.

There is undoubtedly a great contrariety of judicial expression as to the application of the family purpose doctrine in the various States of this country. The authorities are in irreconcilable conflict but the position which this court has taken, which we think is in harmony with

the weight of authority is well set forth by Justice Epes in the case of *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282, 283, where it is said: "The family purpose doctrine which has been adopted by some of the States, and has been applied in Virginia to the particular facts shown in the case of *Litz* v. *Harman,* 151 Va. 363, 144 S. E. 477, under which the head of a family is held liable for the negligence of members of his family while driving an automobile owned by him and kept for family purpose uses, has no application to this case. There is no evidence in the record tending to show that the automobile here in question was kept by Sam P. Smith for family purpose use, or that the son had any general permission to use the car. On the contrary, such facts as do appear from the evidence warrant the inference that this automobile was not kept for family purpose use.

\* \* \* \* \* \* \* \* \*

"It is well settled in this State that, in the absence of negligence on the part of the father, a father is not liable for the torts of his minor child; and that the relationship of father and minor child does not of itself impose liability upon the father for the negligent operation of his automobile by his minor son, even when the automobile is being used with the express or implied permission of the father. Such liability only exists where at the time of the injury the relation of principal and agent or master and servant existed between the father and son, and the son is acting within the scope of his authority or employment expressed or implied. *Cohen* v. *Meador,* 119 Va. 429, 89 S. E. 876; *Blair* v. *Broadwater,* 121 Va. 301, 93 S. E. 632, L. R. A. 1918A, 1011; *Litz* v. *Harman,* 151 Va. 363, 144 S. E. 477. See for cases in other States note in 36 A. L. R. 1138."

It is unnecessary to discuss the instruction complained of.

We affirm the judgment of the court against Clarence Oliver and reverse it as to M. T. Oliver and dismiss the case as to him.

*Affirmed in part and reversed in part.*