# Richmond

## Lawrence Hickerson, An Infant, Who Sues by His Next Friend, O. M. Weakley v. Mildred F. Burner.

March 3, 1947.

Record No. 3147.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*H. A. Shockey* and *Charles Pickett,* for the plaintiff in error.

*James H. Simmonds,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Lawrence Hickerson, aged twenty, while riding a motorcycle along Park street, in the town of Vienna, in Fairfax county, was badly injured when the motorcycle collided with an automobile owned by Mrs. Mildred F. Burner and driven by her daughter and agent, Mrs. Mildred Kerns. To recover damages for his injuries Hickerson, through his next friend, filed suit against Mrs. Burner. The trial resulted in a verdict and judgment for the defendant below.

Since the petition for a writ of error admits the sufficiency of the evidence to sustain the verdict, we shall relate only such circumstances as are necessary for a consideration of the errors assigned.

At the point where the collision occurred, Park street, which is paved to a width of 17.5 feet, is straight and runs through a wooded area in a northwesterly and southeasterly direction. On either side of the street are located residences, sitting back some distance in the woods.

On the afternoon of March 18, 1945, between 6 and 6:30 o'clock, Edward J. Cole, whose residence is on the northeasterly side of Park street, was burning leaves and debris on the edge of his front lawn adjacent to the street. The fire caused a dense smoke which drifted across the road in a southerly direction and at times obscured the view.

The Burner car, driven by Mrs. Kerns, was backed out of the driveway leading to the residence of Charles William B. Smith, which immediately adjoins the Cole residence on the northwest, and like it, fronts on the northeasterly side of Park street. After backing out of the driveway Mrs. Kerns headed southeasterly along Park street and toward the cloud of smoke which was coming from the Cole property on her left. The testimony is uncontradicted that the car was proceeding slowly. According to the testimony of Mrs. Kerns, which is corroborated by that of a number of other witnesses, and which the jury has accepted as true, she was driving on her right-hand side of the street as she entered the cloud of smoke.

Before the car had emerged from the smoke, which at the time was so dense as to obscure the view of passing motorists who might happen to meet there, its left rear fender was struck a glancing blow by the Hickerson motorcycle which was proceeding in the opposite—that is, northwesterly— direction along Park street. As a result of the collision the motorcycle veered to its right, ran off the highway, and came to rest against the post of a mailbox some fifty feet from the point of the impact. Young Hickerson was thrown to the pavement and received serious injuries.

The evidence on behalf of the defendant showed that as the motorcycle neared and entered the cloud of smoke it was proceeding at a rapid rate of sped, possibly as much as sixty miles per hour. Also, there was evidence that as Hickerson approached the smoke cloud and the Burner car he was not looking ahead for oncoming traffic, but was directing his attention toward the persons who were raking leaves on his right on the Cole lawn.

Furthermore, the defendant's witnesses say that at the time of the collision the Burner car was well on its right-hand side of the street.

On the other hand, witnesses on behalf of the plaintiff, Hickerson, say that the motorcycle was always on its proper side of the street, was proceeding at a moderate speed, and that the point of impact was on Hickerson's side of the street.

These irreconcilable conflicts the jury's verdict has resolved in favor of the defendant, and its finding is, of course, binding on us. As has been said, the petition concedes this to be so.

The first assignment of error challenges the action of the lower court in granting Instructions (E), (F) and (G), at the request of the defendant below.

These instructions, in succession, related to the plaintiff's alleged excessive speed, failure to keep a proper lookout, and driving on the wrong side of the street, which the defendant claimed constituted contributory negligence. The jury were told that if they found from the evidence that the plaintiff was guilty of the particular act or omission, and that it "contributed to causing the collision," he was not entitled to recover. No reference was made in any of the instructions to the alleged negligence of the defendant.

The brief of the plaintiff characterizes these instructions as fatally defective in that they are "finding instructions based upon a partial and inadequate view of the evidence."

We need not stop to inquire whether the criticism is sound. Suffice it to say that no such objection was made to

the instructions in the court below, and hence under Rule 22 of this court it cannot be relied on before us.

Instruction (E) dealing with the alleged excessive speed of the motorcycle, and Instruction (F) relating to the plaintiff's alleged failure to keep a proper lookout, were objected to on the ground that they were without supporting evidence, a point not well made in view of the statement of the evidence which we have given.

■ Instruction (G) which the brief says is "particularly obnoxious and misleading," was objected to on the ground that it did not go "far enough as to the question of liability and to the question here as to whether or not she could have avoided this accident if she had been looking."

Whatever this language may mean, it is not a statement "with reasonable certainty," required by Rule 22, of the objection now made before us.

The main assignment urged upon us is that the trial court should have set aside the verdict and granted a new trial because of the misconduct of a juror.

While a motion for a new trial was pending, the attention of the court was directed to the fact that a juror, D. R. Bolen, had, during the taking of the evidence, visited the scene of the accident, viewed the surrounding physical situation, and made a report thereon to the other jurors. Being apprised of this fact, the trial court summoned before it Bolen and the other jurors. Each was examined fully in open court, both by counsel and the trial judge, as to what Bolen had done during his visit to the scene and what had transpired with respect thereto in the jury room.

These facts were developed: The hearing of the evidence before the jury was commenced on Wednesday, July 25, 1945, and concluded on Friday, July 27. Bolen testified that after court had adjourned on Wednesday, without the knowledge or consent of the court, and without the knowledge of the litigants, or their attorneys, he, accompanied by his wife and children, drove past the scene of the accident. He parked his car a short distance away, and without disclosing his purpose to the occupants of the car, went back

to the point where the testimony thus far heard indicated that the collision had taken place. He had, he said, been unable from the testimony to fix the location of Park street and the exact spot where the impact occurred. He noted the location of the several residences in the neighborhood and the mailbox against which the motorcycle had come to rest after the collision, all of which had been mentioned in the testimony thus far adduced in court.

He examined the pavement, hoping to find the marks thereon to which several of the witnesses had referred. However, he saw that the street had been resurfaced and that these marks had been obliterated.

The next morning Bolen reported to the other jurors what he had done and offered to assist them, or any of them, in locating on a plat which had been offered in evidence, the mailbox and the other landmarks referred to in the testimony. Some of the jurors took advantage of his offer, others did not.

All of the jurors testified that the subject of Bolen's visit was never again referred to during either the further hearing of the evidence or the jurors' deliberations on their verdict. Bolen was selected as foreman of the jury and polled his colleagues as to their findings. Only one poll was taken and each juror responded by casting his vote for the defendant, Bolen voting last.

Each juror testified clearly and positively that his decision had in no manner been influenced by what Bolen reported to the group. Nor had Bolen, they said, tried to influence any juror in his decision. Indeed, Bolen testified that he was inclined toward a decision for the plaintiff until he saw that his colleagues were unanimous in the opposite view.

After having heard and considered the testimony of the several jurors, the trial court came to the conclusion that while the conduct of the juror, Bolen, was improper, it had in no way influenced the members of the jury, or any of them, in arriving at their verdict. Hence, the motion for a new trial was overruled.

In *Litz* v. *Harman*, 151 Va. 363, 144 S. E. 477, this

court considered the matter of granting a new trial because of the conduct of a juror in inspecting the scene of an automobile collision without the knowledge or permission of the trial court. We quoted with approval (151 Va., at page 373) the general rule as stated in 20 R. C. L., sec. 43, p. 260, that such conduct of a juror "while improper, is not ground for a new trial unless it appears that the verdict was affected thereby." See also, 39 Am. Jur., New Trial, sec. 78, pp. 91, 92.

We there said that whether a new trial should be granted depended upon the circumstances of the particular case; that, "Much should be left to the trial judge, and unless he abuses his discretion, his judgment should conclude the matter on appeal." (151 Va., at page 375.)

We adhere to that view, with the added caution that only slight evidence of influence or prejudice as a result of such misconduct of a juror should be required to warrant the granting of a new trial.

In *Litz* v. *Harman, supra,* we affirmed the action of the trial court in granting a new trial because of the conduct of a juror. But there the record showed, as we pointed out, that the juror used the knowledge which he had acquired through his unauthorized view of the scene of the accident to discredit in the minds of some of the jurors the testimony of certain of the witnesses. In other words, there was a showing that the knowledge which the juror had acquired outside the courtroom was brought directly to bear by him in influencing the verdict of the jury.

In the case before us the juror was unaware of the proprieties of the situation and was guilty of no intentional wrongdoing. His conduct was, nevertheless, legally improper. It might have resulted in his obtaining evidence which had not been presented to the jury and which might have been prejudicial to one of the litigants, who would have had no opportunity of meeting, explaining or rebutting it.

Fortunately, this juror discovered no evidence which had not already been brought to the jury's attention in open

court.   Moreover, a full investigation of the matter and an examination of each of the jurors showed that what Bolen had done in no wise influenced his decision or that of any of his colleagues.   He did not as a result of the information obtained by him at the scene, undertake to discredit in the minds of any of the jurors the testimony of any witness who had appeared before them.   Indeed, as has been said, he made no attempt to influence any of his colleagues, and only expressed his view as to what the verdict should be after each of the others had spoken.

We are of opinion that in this situation the trial court was fully warranted in refusing to set aside the verdict.

On the whole we find no reversible error in the proceedings below, and the judgment is

*Affirmed.*