## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

Linda McGuire, An Infant, Etc. v. Sylvia Jean Howard.

Roscoe C. McGuire, Jr. v. Sylvia Jean Howard.

December 3, 1962.

Record Nos. 5454, 5455.

Present, All the Justices.

*Neal J. Patten* and *I. Leake Wornom, Jr.* (*Patten & Wornom*, on briefs), for the plaintiffs in error.

*Daniel W. Wilkinson, Jr.* and *Charles E. Ford* (*Murray, Ford, West & Wilkinson*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The question in these cases is whether the court below should have set aside the verdicts for the alleged misconduct of a juror.

Linda McGuire, thirteen years old, while riding a bicycle, was struck and injured by an automobile driven by the defendant, Sylvia Jean Howard. She brought this action for damages, by her father and next friend, against the defendant for her injuries, and her father brought his action against the defendant for medical expenses. The two cases were tried together before a jury which returned a verdict for the defendant in each case. Motions to set aside the verdicts were overruled and judgments were entered thereon. Within twenty-one days thereafter, Rule 1:9, the motion was renewed on the after-discovered ground that during the trial a juror had improperly visited and made tests at the scene of the accident. Affidavits of some of the jurors were filed in support of the motion, a hearing was had before the court at which all the jurors testified and thereafter the motion was overruled, the court being of the opinion that while the conduct of the juror in visiting the scene was improper, it in no way influenced the jury in arriving at their verdicts. Appeals were taken by both plaintiffs, the matter is before us on one record, and the plaintiffs will be referred to as one.

The accident happened in daylight about 5 p.m., on February 10, 1960, at the intersection of Nansemond drive and Arlington avenue, in the city of Newport News. Nansemond runs east and west, Arlington runs north and south, and they cross at right angles. Each street is about 33 feet wide and there was no traffic control at the intersection. The speed limit was 25 miles an hour.

The testimony for the plaintiff was that Linda was riding her bicycle eastwardly along the south side, her right-hand side, of Nansemond, in the street, going to her home east of the intersection. When she was "about two bicycles" from the intersection she saw defendant's car to her left coming south on Arlington. It was then about the length of the courtroom from the intersection. Linda thought she had time to cross so she kept on going. After she entered the intersection she saw defendant's car "just approaching" the intersection. She then thought she could not get all the way across so she turned right into Arlington, heard something behind her, turned left to get out of the way and was struck by the front of defendant's car. A little girl on the opposite side of the intersection testified that

Linda got to the intersection first. After the collision the bicycle was about twelve feet south of the south curb extended of Nansemond and Linda was lying two feet south of the bicycle, and both were about twenty-one feet from the west curb of Arlington. Defendant's car made approximately twenty-one feet of skidmarks, beginning in the center of the intersection and continuing south in a straight line.

Linda testified she did not believe there were any cars parked on the south side of Nansemond next to her at the corner.

The defendant was the only other eye-witness who testified. Her testimony was to the effect that a block from the intersection she was going about twenty miles an hour. As she neared the intersection she lifted her foot from the accelerator and saw two little girls riding on bicycles in the street on her left and Linda coming down the sidewalk to her right. As she entered the intersection Linda was near the second tree on Nansemond, which was about thirty feet from the intersection. She remembered seeing her coming down the sidewalk. She thought Linda was going to stop or turn up the sidewalk on Arlington. She had no idea Linda would come out in front of her, but she came straight ahead off the sidewalk and defendant applied her brakes, being then approximately in the middle of the intersection, and had almost stopped when the collision occurred right opposite the [Nansemond] sidewalk. When she applied her brakes Linda "was just fixing to come off the curb". There was lots of loose gravel at the intersection and cars were "parked on either side of the street".

A witness for defendant testified that the sidewalks on both Nansemond and Arlington were from three to five feet from the curb, with grass between. He was not sure whether the sidewalk on Nansemond extended all the way to Arlington.

The evidence in the case was finished on April 13, 1961, and court adjourned for the day. Next morning at six-thirty juror Andrew, without the knowledge of court, counsel or other jurors, drove his automobile to the scene of the accident. He explained in his affidavit, which he afterwards testified that he had written out himself and it showed what had transpired: "The defendant had testified that she reduced her speed as she entered the intersection, and that she applied her brakes as soon as she saw the plaintiff was coming into the street. It bothered me as to whether or not she could stop in a shorter distance than the evidence disclosed that she had stopped." At the scene, he said, he observed the streets and the close proximity of the side-

walks thereto. He drove his car south on Arlington at twenty miles an hour, applied his brakes when one-fourth of the way into the intersection, and found that he stopped with the front of the car immediately opposite the south curb of Nansemond. He noticed, he said, that there were cars parked on both sides of Nansemond and Arlington up to within a car length of each corner, and was satisfied in his mind that the same situation "was probably in effect on February 10, 1960 at 5:00 p.m. This indicated to me that you could not see very far at the intersection in either direction."

That morning, April 14, in the jury room, before hearing the court's instructions and the arguments of counsel, he told the other members of the jury of his visit to the scene and his observations of the physical layout "and that I had proved to myself that from a point one-fourth into the intersection I could stop my car before the front end left Nansemond Drive." He said that the defendant had testified that she applied her brakes when she was half way through the intersection "and therefore the test showed that she could not stop her car before she passed the South curb of Nansemond Drive."

He made a sketch, he said, of the intersection as seen by him, showing the grass plots, sidewalks, and parked cars, "which sketch was shown to all members of the Jury. * * This sketch was not thereafter used by either me or the Jury in our deliberations."

All of the seven jurors were called before the court and examined and each testified that his verdict was based on the evidence he heard from the witness stand and not on anything that Mr. Andrew said or did relative to his visit to the scene. Nevertheless, the following appeared in the testimony of the following named jurors:

Juror Hancock testified that when he came into the jury room Mr. Andrew had a sketch on a piece of paper and was discussing it with some of the other jurors and stated that he had been out to the scene and had checked to see how far it would take to stop his car at twenty miles an hour; that there were parked cars shown on the sketch, he thought but was not sure, all the way up to the corner on both sides of the street; that the sketch gave him, Hancock, a better mental picture of the location and helped him to decide that "little Linda didn't use all of the precaution that she could have to avoid the accident."

Juror Marks testified that Mr. Andrew did make a statement that there were cars parked on each side of the road and that he found in testing his car that it was much harder to stop on a road with loose

gravel than on a hard-surfaced road. He said the statements he had made in his affidavit were correct, and among those was the statement that he was primarily concerned with visibility at the intersection, whether trees or cars would have obstructed the view of a driver proceeding south on Arlington, as was the defendant, who had mentioned in her testimony about seeing the child at the second tree. Mr. Andrew stated, he said, that he had observed trees at the intersection and also cars parked close thereto, and these statements helped to clarify the situation as far as the physical layout was concerned. He added that he did not feel that any statement made by Mr. Andrew pertaining to his view of the scene affected his ultimate verdict.

Juror Bailey testified that Mr. Andrew stated that he had been to the scene of the accident; that a diagram showing the scene was passed around to the jury; the sidewalks were pointed out on the sketch and a tree was marked on it. Bailey said he felt that if Linda came off the sidewalk then the defendant was not guilty of negligence and that Mr. Andrew's diagram was a contributing factor in his deciding that the defendant was not guilty of negligence; that that was what he had said in his affidavit and his affidavit was correct as he gave it. His affidavit also stated that Mr. Andrew had said in response to a question from a juror that the sidewalk went all the way to the curb on the corner Linda was on; that the sidewalk was only four or five feet from the street and he "also told us where the tree was that the child was by when first seen by the defendant." These statements and the diagram, he said, "were a contributing factor in me deciding that the defendant was not guilty of negligence."

*Litz* v. *Harman*, 151 Va. 363, 144 S. E. 477, involved a situation similar to the one here. It was there said that no inexorable rule could be formulated and that the proper action depended upon the circumstances of the particular case. The general rule, however, was stated to be that an unauthorized view by a juror, while improper, is not ground for a new trial unless it appears that the verdict was affected thereby; but where the mere fact of an inspection, in view of the nature of the suit, is calculated to influence the jury to the prejudice of the unsuccessful party, it will be presumed that the knowledge so obtained was in fact prejudicial, and in absence of evidence to the contrary a new trial will be granted; and this caution was given:

"Such is the respect which this court pays to the verdict of a jury that the trial courts should always be alert to see that the jurors are

not subject to any unfair or improper influences, and that all of the testimony which tends to affect their conclusion shall be produced in open court. It follows that this court should uphold and not reverse a trial court upon such a debatable question, unless there has been a clear abuse of discretion." 151 Va. at 375, 144 S. E. at 480.

In *Hickerson* v. *Burner*, 186 Va. 66, 72, 41 S. E. 2d 451, 454, we adhered to the view stated in *Litz* v. *Harman, supra,* that much should be left to the trial judge and unless he abuses his discretion his judgment should conclude the matter on appeal, but "with the added caution that only slight evidence of influence or prejudice as a result of such misconduct of a juror should be required to warrant the granting of a new trial."

■ Here there was more than slight evidence of influence resulting from the improper visit of juror Andrew to the scene.

The court instructed the jury in substance that if the plaintiff was riding her bicycle in the street and entered the intersection before or at approximately the same time as the defendant, then plaintiff had the right of way, but if plaintiff was riding on the sidewalk she had no right of way over the defendant; and if the plaintiff suddenly rode her bicycle from the sidewalk, when the defendant was too close to her in the exercise of ordinary care to avoid the accident, then the defendant was not liable.

The critical questions, therefore, were whether Linda was riding her bicycle on the sidewalk, prohibited by Code § 46.1-229, or in the street, and whether the defendant exercised reasonable care under the circumstances. These were questions for the jury to answer on conflicting evidence and all of the testimony which tended to affect their conclusion should have been produced in open court. *Litz* v. *Harman, supra.* It was not so produced.

Juror Andrew had heard the evidence produced in court but was bothered as to whether the defendant could have stopped in a shorter distance than she did. He drove to the scene at an early hour of the morning and with his own car made a test which corroborated the defendant's testimony and convinced this juror of its truth. He explained this test to the other jurors in the jury room without the knowledge of court or counsel. The result was to provide the jury, out of court, with evidence that was at least of questionable admissibility if offered in court. 7 Mich. Jur., Evidence, § 66, p. 412; *Portsmouth Transit Co.* v. *Brickhouse, Adm'r*, 200 Va. 844, 108 S. E. 2d 385.

Juror Andrew made and showed to the other jurors a sketch showing the grass plots, sidewalks and parked cars. His sketch showed cars parked up to the corner because, he said, they were so parked on his visit to the scene at 6:30 a.m., April 14, 1961, and he was satisfied in his mind that the same situation probably existed at 5 p.m. on February 10, 1960. He thereby contradicted the plaintiff's testimony that, as she believed, no cars were parked there on her side of the street at the time of the accident.

The defendant testified that as she approached the intersection she saw the plaintiff on the sidewalk at the second tree from the intersection. Juror Andrew put on his diagram the tree he thought she referred to. He also showed the sidewalk coming all the way to the curb on Nansemond corner, whereas the sketch made by the police officer indicated it stopped short of the curb, and the latter testified that the curb was six or eight inches high.

That the view and test made by juror Andrew affected him in weighing the testimony he had heard in court appears from his testimony. It satisfied him with the truth of the defendant's testimony with reference to her ability to stop after she saw the plaintiff coming into the street, about which he was previously in doubt. The sketch of the scene as made by Andrew and shown to the other jurors helped juror Hancock to decide, so he testified, that plaintiff did not use the precaution she should have used to avoid the accident. Juror Bailey testified that the statements and the diagram made by Andrew were a contributing factor in his decision that the defendant was not guilty of negligence.

In the circumstances so shown the verdicts of the jury should not have been allowed to stand and it was error to overrule the plaintiff's motion to set them aside. The judgments appealed from are therefore reversed, the verdicts of the jury are set aside and the cases are remanded for new trials.

*Reversed and remanded.*