# Richmond

MATTIE HOGG CHARLES v. COMMONWEALTH MOTORS, INCORPORATED.

January 25, 1954.

Record No. 4157.

Present, Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*J. L. Atkins, Charles E. Ford* and *Murray, Ford, West & Wilkinson,* for the plaintiff in error.

*John W. Fussell* and *Stuart L. Williams,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Mrs. Charles, brought this action against the defendant, Commonwealth Motors, Incorporated, for damages for injuries suffered by her when she fell in the defendant's place of business. At the conclusion of the evidence offered by both sides the court struck out the plaintiff's evidence on the ground that it did not make out a case. The jury accordingly returned a verdict for the defendant. The only question on this appeal is whether the court erred in striking out the plaintiff's evidence.

There is little conflict in the evidence and upon such as exists the plaintiff's evidence now prevails. Our inquiry is whether reasonable minds could differ in regard to the facts and the proper inferences to be drawn therefrom. *Acme Markets* v. *Remschel*, 181 Va. 171, 179, 24 S. E. (2d) 430, 434.

Admittedly the plaintiff was on the defendant's premises as its invitee. While the defendant was not an insurer of her safety, it owed her the duty to use ordinary care to have its premises reasonably safe for her visit. She had a right to assume that the premises were reasonably safe, and she was not required to be on the lookout for danger in the absence of knowledge or warning of its presence. She was, of course, chargeable with knowledge of a danger which was open and obvious to a person exercising reasonable care for his own safety. *Knight* v. *Moore*, 179 Va. 139, 145-6, 18 S. E. (2d) 266, 269; *Crocker* v. *WTAR Radio Corp.*, 194 Va. 572, 574, 74 S. E. (2d) 51, 52-3.

The plaintiff was sixty years of age and had been a public school teacher in Richmond for thirty-two years. The defendant was an automobile dealer in that city with its place of business on Broad street. On January 23, 1951, about 5:00 p. m., the plaintiff, who was interested in buying an automobile, accompanied by her husband, visited the defendant's premises to look at a car there on display in the

showroom. Neither had been in the building before. A salesman met them at the entrance, which was at the side of the building and to the rear of the showroom, and led them to the showroom which was entered through a doorway equipped with sliding doors or curtains. This doorway opened upon a ramp a little wider than the doorway, used to drive automobiles in and out of the showroom and also for the use of customers. The floors of both the ramp and the showroom were surfaced with a light-colored, pinkish-white terrazzo. Accurate measurements are not given in the record but it appears that the ramp itself was six feet wide or more. At the doorway it was approximately 12 inches higher than the level of the showroom floor and was about 12 feet long, sloping gradually from the doorway to the floor of the showroom. In approximately the middle of this ramp and immediately in front of the doorway was a black rubber mat about three feet wide, perhaps an eighth of an inch thick, and extending to the bottom of the ramp. From the edge of the mat to the edge of the ramp the terrazzo surface was bare.

As the salesman opened the door and ushered them through, the plaintiff and her husband paused for the salesman to step around and he preceded them down the ramp. The plaintiff and her husband followed—he holding her left arm, both walking on the mat. When they had taken two or three steps and were about half way down the ramp the plaintiff remarked, "That is a pretty car;" the salesman replied, "Let's look at it," or "Come look at it." He had then stepped to their right in front of the car and was calling attention to some feature of it. In order to see, the plaintiff had to step off of the mat and as she made the first step toward the car she placed her foot on the terrazzo surface of the ramp, which proved to be very slippery; her foot slipped from under her, she fell and was injured.

When plaintiff's husband stepped off of the mat on to the surface of the ramp to assist his wife after she fell, he also slipped but did not fall. He said the ramp was "of a slick surface of tile or something," and "was very slick." The plaintiff said the ramp was of "very slippery, glazed material."

There was no evidence contradictory of the plaintiff's evidence that the surface of the ramp was slippery or very slick; nor was there any evidence that the plaintiff's fall was due to any cause other than the slippery condition of the sloping surface of the ramp. She was wearing what she described as foot saver shoes with cuban heels, one of which was exhibited to the jury.

The defendant says that there was no evidence that the ramp was improperly constructed or that it was not properly maintained; that evidence that its surface was slippery or very slippery was not proof of negligence. It introduced evidence that while it customarily waxed the floor of the showroom, it did not wax the floor of the ramp—one of its witnesses saying, "we had orders not to wax the ramp, because it had too much incline."

Defendant invokes the principle that in order to recover for negligent injury a plaintiff must furnish evidence to show how and why the accident occurred; some fact or facts upon which a jury can base its verdict, not leaving the subject merely to conjecture or random judgment. *Chesapeake & O. Ry. Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508.

Here, however, the plaintiff's evidence did show how and why the accident occurred. It showed, or at least tended to show, that it occurred because of the slippery condition of the surface of the sloping ramp upon which the plaintiff was invited to walk. It is true that evidence that a plaintiff slipped on a level terrazzo floor or other type of floor in common use, without more, would not be sufficient proof of negligence, *W. T. Grant Co.* v. *Webb,* 166 Va. 299, 184 S. E. 465; and

evidence may be sufficient to establish that maintenance of a terrazzo floor with a slight slope is not negligence, *Boucher* v. *Paramount &c. Theaters*, (La. App.) 30 So. (2d) 211.

However, evidence that a plaintiff was invited to walk down an incline with a very slippery terrazzo surface, without knowledge or warning of its condition, makes a different case. Important questions arise as to how slippery was the surface and what was the degree of incline. As said in *Nicola* v. *Pacific Gas & Electric Co.*, (Cal. App.), 123 P. (2d) 529, 531: "Of course slipperiness is an elastic term. From the fact that a floor is slippery it does not necessarily result that it is dangerous to walk upon. It is the degree of slipperiness that determines whether the condition is reasonably safe. This is a question of fact." Being a question of fact, it is for the jury to decide unless reasonable men could not differ as to the proper answer. See Annotation, 100 A.L.R. 710.

Here the plaintiff was on unfamiliar premises. She had not entered this showroom before. According to her evidence she was guided by the defendant's salesman and stepped from the thin rubber mat on to the terrazzo surface of the ramp at the invitation, express or implied, of the salesman, without any warning from him and without any knowledge on her part that any danger was involved in such a move. A witness for defendant said that the mat was very thin and a person would step from the mat to the surface of the ramp without noticing any difference in level.

In these circumstances we conclude, as we did in the *Crocker* case, *supra*, 194 Va. at page 575, 74 S. E. (2d) at page 53, that it was for the jury to say whether, in the exercise of ordinary care to make its premises reasonably safe, the defendant should have given a warning or taken other precautions to guard against injury to the invitee who was unaware of the condition.

The defendant did not argue here that plaintiff was guilty of contributory negligence as a matter of law. Whether

the condition complained of was so open and obvious that the plaintiff in the exercise of ordinary care should have observed it, was likewise a question of fact for the jury to decide, not a question of law.

The judgment below is reversed and the case remanded for a new trial.

*Reversed and remanded.*