## Staunton

WILLIAMSBURG SHOP, INCORPORATED v. MAXINE BRYANT WEEKS.

September 3, 1959.

Record No. 4974.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Aubrey R. Bowles, Jr.* (*H. Armistead Boyd; Bowles, Anderson, Boyd, Clarke & Herod,* on brief), for the plaintiff in error.

*Harry P. Anderson, Jr.* (*Donald R. Taylor; Satterfield, Anderson & Beazley,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

On February 7, 1957, while Maxine Bryant Weeks, hereinafter referred to as the plaintiff, was a customer in a store operated by Williamsburg Shop, Incorporated, in the city of Williamsburg, she

fell on a stairway and was injured. She filed an action at law against Williamsburg Shop, Incorporated, and Williamsburg Restoration, Incorporated, the latter being the owner of the premises, to recover damages for her injuries, claiming that her fall and injuries were caused by the negligent construction and maintenance of the stairway. There was a trial by a jury which resulted in a verdict in favor of the plaintiff against the defendant, Williamsburg Shop, Incorporated, in the sum of $5,500, and in favor of the defendant, Williamsburg Restoration, Incorporated, upon which the trial court entered judgment. The matter is now before us on a writ of error granted the defendant, Williamsburg Shop, Incorporated, whose main contention is that the evidence fails to show that it was guilty of any negligence which was a proximate cause of the plaintiff's fall and injuries. No question has been raised as to the validity of the judgment in favor of Williamsburg Restoration, Incorporated, and that defendant is not concerned in this appeal.

For several years prior to the accident Williamsburg Shop, Incorporated, had conducted the department store on premises which it had leased from the owner, Williamsburg Restoration, Incorporated. The ladies' ready-to-wear department is located on the second floor which is reached by a stairway leading to an intermediate landing, then by several steps to a second landing, and then by other steps to the second floor.

On the day of the accident the plaintiff, aged thirty-three, who had been a frequent customer there, entered the store with her two young daughters and a friend, Mrs. Coddington, for the purpose of buying an evening dress for one of the daughters. After completing the purchase at the ladies' ready-to-wear department on the second floor and as the plaintiff descended the stairway, she fell and was injured. The descending stairway leads from the second floor to an intermediate landing which is 40½ inches deep or wide from the bottom stair to the wall. On the wall opposite the stairway there is a showcase which does not reach the floor but extends over the landing and reduces its usable depth to 30¾ inches. On the left of the descending stairway is a handrail attached at the lower end to a newel post. On the left side of the stairway leading downward from the landing there is likewise a handrail attached to the newel post. On the sides of the stairway adjacent to the wall there are no handrails. The steps and landings are made of polished hardwood without carpet or other covering.

After the plaintiff had completed her purchase on the second floor, Mrs. Coddington and the Weeks daughters descended the stairway and reached the ground floor safely. Mrs. Weeks, the plaintiff, after lingering near the top of the stairs to talk with the manager of the department, started down the stairs leading to the landing. As she said, she went down the left-hand side holding onto the railing with her left hand and as she "came down the first flight of stairs and started to turn on the landing" around the newel post for the purpose of going down the next flight of stairs, her right foot "slipped off of the landing" and she fell. In the effort to break her fall, she said, she "grabbed" the railing with her right hand and her face struck the railing, causing the principal injuries complained of. At the time she was wearing what she described as "normal ladies' wearing shoes," with an "average heel." The heels were $3\frac{1}{4}$ inches high in the rear, $2\frac{1}{2}$ inches high in the instep, and 9/16 by 9/16 of an inch across the bottom. It developed that when she slipped or fell the heel on her right shoe was broken off.

The undisputed evidence is that at the time the plaintiff fell there was no trash or debris on the stairway.

When the manager of the store was told of the plaintiff's fall he went to her assistance, offered her medical attention, and had her taken to a hospital. Before she left the store he asked her the cause of her fall. Her reply was that he should not "worry" because it was not his "fault," that "I tripped on my heel." There was no denial of this testimony.

Admittedly, the plaintiff was an invitee in the store and as such the operator of the store owed her the duty of exercising ordinary care to see that its premises were in a reasonably safe condition for her use. *Thalhimer Bros.* v. *Buckner*, 194 Va. 1011, 1013, 76 S. E. 2d 215, 217, and cases there collected.

The plaintiff's brief concedes that this principle applies, but insists that the evidence supports the finding that there were these "negligent conditions of the stairway," "any one or all of which proximately caused" her fall, namely: (1) The depth of the platform did not provide her with sufficient space in which to make the turn safely; (2) the showcase on the landing distracted her attention as she was making her turn on the landing; (3) the lack of antislip nosings or treads on the steps did not afford her safe traction; (4) the lack of a railing on the right side of the stairway; (5) the stairway was wet, damp and slippery from water tracked in by customers. These

items of alleged negligence and their casual connection with the accident will be discussed in the order named.

The plaintiff offered evidence that the depth of the landing lessened by the wall showcase was not in accord with the safety provisions of the building codes of the cities of Richmond and Newport News and the accepted standard of architects and engineers. But the plaintiff did not testify that the restricted depth of the landing caused her to fall, nor is there any evidence of such causal connection.

Neither did the plaintiff testify that her attention was so distracted by the showcase as to cause her to fall. While she did say that she was "automatically" looking at the showcase as she came down the stairway before reaching the landing, she further said that she was "not looking at the showcase" after she had turned around the newel post and was preparing to go down the next stairway just before her fall.

The stairway is constructed of hardwood which, the evidence showed, is the usually accepted material for that purpose. While an engineer testified for the plaintiff that a variety of antislip nosings or treads were suitable, available and frequently used for stairways of this type, he further said that the absence of such equipment did not make the stairway "unsafe," nor was there any evidence that the installation of such equipment would probably have prevented the plaintiff's foot from slipping on the edge of the landing.

While a witness for the plaintiff testified that safety codes "generally require rails on both sides of stairways," there is no evidence that the absence of a right-hand railing caused the plaintiff's fall or contributed to her injuries. According to her own testimony, as she descended the stairway she was holding onto the railing on her left. After she started to turn on the landing around the newel post, her right foot slipped off of the landing and she fell against the railing on her left and grabbed it with her right hand. There is no evidence from her, or from any other source, that the presence of a railing on her right would have prevented her fall or lessened her injuries.

The final claim of the plaintiff is that the evidence supports the finding that the stairway was wet and slippery from water tracked in by customers from the wet street, and that this caused her foot to slip. The strongest evidence on the subject is the testimony of Mrs. Coddington, a witness for the plaintiff. When asked "whether there was any moisture or dampness" on the stairs, she replied: "To the best of my recollection they were damp." But when asked on

cross-examination whether the steps were damp where the plaintiff fell, this witness replied: "Well, it seemed to me that the steps were damp. Whether right there or not, I didn't notice that particularly." The plaintiff, when asked by her counsel, "were you aware or did you observe any moisture or water on the stairway", replied: "No. But as we went into store there was nothing to wipe our feet on and it was damp at the doorway, going in the doorway there." Thus no witness testified that the stairway or landing where the plaintiff fell was wet or slippery. Hence, there is no evidence to support the finding, as the plaintiff claims, that this condition caused her fall.

Indeed, the plaintiff's own admission immediately after her fall refutes the claim here asserted that it was caused by some condition of the premises attributable to the negligence of the defendant. As has been said, it is undenied that she told the manager of the store that her fall was caused by her tripping on her heel, a situation for which the defendant was not responsible.

It is, of course, elementary that where the evidence shows that any one of several things may have caused the injury, for some of which the defendant is responsible and for some of which he is not, and leaves the real cause to speculation and conjecture, then the plaintiff has failed to establish his case. *Chesapeake & Ohio Ry. Co.* v. *Seay*, 195 Va. 566, 572, 79 S. E. 2d 631, 634, and cases there cited. Such is the case here.

The verdict being without evidence to support it should have been set aside by the trial court and a final judgment entered for the defendant. A final order to that effect will be entered here.

*Reversed and final judgment.*