**Margaret CROSBY, Appellant,**

v.

**Peter M. MEREDITH, trading as Meredith Construction Company, and United States of America, Appellees.**

**No. 8429.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 24, 1961.

Decided Feb. 20, 1962.

**324**

Israel Steingold, Norfolk, Va. (Steingold, Steingold, Chovitz & Boyce, Norfolk, Va., on brief), for appellant.

Allan S. Reynolds, Norfolk, Va., for appellee Meredith Const. Co.

Roger T. Williams, Asst. U. S. Atty., Richmond, Va. (C. V. Spratley, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee United States.

Before BOREMAN and BELL, Circuit Judges, and MARTIN, District Judge.

J. SPENCER BELL, Circuit Judge.

Plaintiff brought civil action against the defendant Meredith Construction Company and the United States for personal injuries. At the conclusion of the plaintiff's evidence, the Court sustained the corporate defendant's motion for a directed verdict and also dismissed the case against the Government.

Plaintiff, wife of a non-commissioned officer in the Army, was attending a weekly Bingo game at an N. C. O. Club at Fort Story, Virginia, near where she and her husband resided. The club house was undergoing repairs being made by the Meredith Construction Company. A ditch three feet wide and two feet deep had been dug in front of the main entrance. A temporary ramp had been constructed over this ditch. It was made of four new planks, two by sixes or two by eights, thirty-six inches long and sloping at a fifteen degree angle. The top of the ramp was fastened to the door sill about one and five eighths inches below the level of the floor. The planking ran lengthwise the ramp, there was no hand rail and no cross pieces on the surface to offer a foothold. The ramp was outside the building, and although it was covered by an awning there was testimony that the night was misty and the surface of the ramp was damp. Sergeant Twiford, the N. C. O. in charge of the premises, testified: "I believe the ramp was wet, sir. I wouldn't say soaking wet. I'd say damp, because it had been drizzly. It's a small porch out over the ramp and the patio." When the game terminated for the evening, some one hundred guests left the building at approximately the same time. The plaintiff testified that she slipped when she stepped on the ramp and fell face forward onto the sidewalk in front of the club, injuring herself seriously. She did not see a "watch your step" sign posted on the doors, which had been propped open as the crowd left.

The Government having continued using the building during repairs, the two defendants would be liable to the plaintiff for their negligent acts as joint tort feasors. The liability of the defendants must be measured by the law of Virginia. With respect to the United States, 28 U.S.C. 1346(b) expressly provides that the tort liability of the United States is to be determined " * * * In accordance with the law of the place where the act or omission occurred". The fact that the act or omission occurred on federal property does not change the rule, since the property lies within the bounds of the State of Virginia. Olson v. United States, 175 F.2d 510, at p. 512 (8 Cir. 1949), Duff v. United States, 171 F.2d 846, at p. 851 (4 Cir. 1949).

The trial judge nonsuited the plaintiff at the conclusion of her evidence and this ruling raises the sole question for this Court: Was there sufficient evidence to go to the jury on the negligence of these defendants? We think there was under the Virginia law. The case of Charles v. Commonwealth Motors, Inc., 195 Va. 576, 79 S.E.2d 594 (1954) is in point. There an invitee slipped and fell upon an inclined Terrazzo ramp leading from the doorway into the sales room of defendant automobile company. The trial court directed a verdict at the conclusion of the evidence and the Supreme Court of Appeals reversed. In doing so, the Court said: "Our inquiry is whether reasonable minds could differ in regard to the facts and the proper inferences to be drawn therefrom. * * * While the defendant was not an insurer of her

safety, it owed her the duty to use ordinary care to have its premises reasonably safe for her visit" (79 S.E.2d at pp. 594–595). There, too, the defendant contended that it is not sufficient for the plaintiff simply to show that she slipped, it is necessary to show how. To this the Court replied: "Here, however, the plaintiff's evidence did show how and why the accident occurred. It showed, or at least tended to show, that it occurred because of the slippery condition of the surface of the sloping ramp upon which the plaintiff was invited to walk", (at p. 596).

In the instant case, the defendants had invited the public to use the premises of the club. Whether or not those premises were in safe condition for public use under the circumstances was a question of fact upon which we feel reasonable men could differ. It is true that the ramp was solidly built, but this does not overcome the possible inference that the ramp as constructed offered a potential danger to users. Reasonable men may differ as to whether unpainted lumber is slippery when damp and therefore, whether a proper construction of the ramp would have included hand rails and cross pieces in order to give more stability to persons using the ramp.

 The plaintiff testified that when her foot touched the ramp she slipped. The Sergeant in charge testified that the ramp was damp. This it seems to us is sufficient evidence from which the jury could draw the inference that the slickness of the surface had caused the fall. The degree of incline, the absence of the safeguards heretofore mentioned, the fact that the top of the ramp was not flush with the floor, are factors which should be weighed in determining whether the premises were dangerous. The inferences which we say could be drawn from the facts here in evidence are supported by the further testimony that others had slipped on the same ramp. It would be the province of the jury to determine if the circumstances were sufficiently different to give no probative value to those incidents. Where there is substantial evidence in support of the plaintiff's case, the judge may not direct a verdict against him even though he may feel that the weight is on the other side. McCracken v. Richmond, Fredericksburg and Potomac R. Co., 240 F.2d 484 (4 Cir. 1957).

For these reasons, the case is reversed and remanded.

Reversed.

BOREMAN, Circuit Judge (dissenting).

I respectfully disagree with the majority view that the District Court erred in taking the case from the jury because of insufficiency of evidence of negligence on the part of the defendants.

The ramp was clearly described, by the one who constructed it, as made of four planks each 8 inches wide, 2 inches thick and 38 inches long, placed side by side with no spacing and tied together by planks, each 2 x 4 inches, on the under side. The 2 x 8's were fastened to the building immediately under the 1⅝ inch sill at the club doorway and, at the opposite end, were beveled at an angle where they met flush with the cement. "The distance from the threshold of the entrance door of said club to the ground was six inches from the threshold to cement walkway and there was a one and five-eighths inch drop from the threshold to the platform."

The evidence disclosed that the ramp was constructed of new, unpainted lumber; it was solid and steady and one witness stated that a tank could have run across it. It was covered over and protected by a roof or canopy. The ramp and doorway were well lighted. The doorman testified that there were two warning ("Watch Your Step") signs on the club house door although the plaintiff denied that she saw any such sign. There were no foreign substances or debris on the ramp although a light drizzling rain had been falling and the surface of the ramp was described as "damp". It is not unreasonable to conclude that patrons, alighting from their cars in the club parking area, accumulated water or moisture on the soles of their

shoes and then walked across the ramp as they entered the club. In this manner the surface of the ramp may have become damp but no one testified that such surface was directly exposed to falling rain. The plaintiff stated that she walked over the ramp and entered the club through the same doorway by which she left but noticed nothing unusual. It had been raining before she entered.

Plaintiff made no statement in her testimony concerning any defect in the ramp or entrance way; indeed, she made no statement whatsoever as to the condition of the ramp.[1] The evidence discloses that there were two rubber mats, each about one-half inch thick, placed end to end over the concrete at the lower end of the ramp, obviously to provide a cushioned surface over which the patrons could walk as they approached the club from the direction of the parking area. There is not even a suggestion of negligence in the use or placing of these mats although the plaintiff testified that she fell after she tripped on the one at the end of the ramp.

It was shown in quite hazy fashion that four or five persons had slipped on the ramp on occasions prior to the night in question, but there was no disclosure as to whether the ramp was wet or dry on those occasions or whether the occurrences were during the night or day. Interestingly, so far as disclosed by the evidence, of the approximately one hundred guests leaving the club at the same time and under the very same conditions, only the plaintiff slipped or tripped or fell. It is significant that not one of the large number of persons who walked over and upon the ramp that evening, not even the plaintiff, testified that the ramp was *slippery* because of dampness.

Apparently in desperation and sensing the weakness of her position on appeal, the plaintiff in her reply brief suggests that the courts sitting in the Tidewater, Virginia, area should take judicial notice of the fact that at the location of this club the area is all sand. She then presents this argument:

> "One hundred or more guests, from an unknown number of cars parked in the parking area, during a drizzly rain, had come from this *sandy*, wet area, across two rubber mats, two and one-half or three feet long, and onto the *uncovered* ramp. Naturally they each tracked *some* sand and moisture onto the ramp. As it was raining, and at night, it takes no expert to know that the *wet sand* did not dry up during the two hours or so of the bingo game. *If the wind had been blowing* and the weather had cleared up causing the *sand* to dry, there still would have been a sloping, *sandy, slippery,* ramp. If the Court could not take judicial notice of the resulting slippery condition, it would certainly be a jury issue." (Emphasis supplied.)

This argument is misleading and not based upon evidence in the record. Insofar as I can discover, there is not one word of testimony to indicate that there was sand on the ramp. We are not told the nature of the surface of the parking area. It was shown that an asphalt pave-

---

1. The only explanation given by the plaintiff of her fall is contained in the following excerpts from her testimony:

 "Q. Now, tell us what happened after the bingo was over. A. Well, we left immediately, and upon leaving the building as we went out the door, there were quite a few people, my girl friend and I couldn't even walk together. She was in front of me and I slipped as I stepped out the door and tripped, which threw me into the street.

 "Q. Do you clearly recall what happened? A. That's as clearly as I re-member, and I think I remember it clearly.

 &ast; &ast; &ast; &ast; &ast;

 "Q. Where did you slip? A. On the ramp and that was at the entrance of the door.

 "Q. Yes. And where did you fall? A. I slipped apparently there and then tripped on the mat that was on the end of the mat or at the end of the mat.

 "Q. At the end of the what? A. The ramp—excuse me—and it threw me and I fell face forward &ast; &ast; &ast;."

ment led from the parking area up to the entrance to the porch of the club and that there was sand at the sides of the pavement but none *on* it. There was no evidence that the wind was or was not blowing. Reference is made to an "uncovered ramp". Perhaps this reference was intended to mean that there was no covering directly attached to and over the wooden surface, but it is an undisputed fact that a canopy or roof extended out over the ramp. If it is now, at this late stage in the proceedings, a new theory of the plaintiff to be injected into the case that the ramp became slippery because of an accumulation of sand thereon, there is no evidence to support it. Furthermore, if the trial court had taken judicial notice of the sandy soil in the area and had deduced therefrom that there was an accumulation of sand on the ramp, there is a complete absence of evidence to show the kind, texture and quality of the sand and the effect of moisture thereon. All sands are not alike. It is a matter of common knowledge and experience that sand is *intentionally* deposited on certain slippery surfaces to create friction. (For example, slippery steel rails are sanded to provide traction for railroad locomotive wheels; sand is placed on streets and sidewalks to counteract the effect of ice and snow and as an aid to the movement of vehicles and pedestrians; sand is intended to produce an abrasive effect when used in sandpaper.) Proof of the bare fact that plaintiff slipped and fell is not sufficient to sustain plaintiff's burden to make out a prima facie case of defendants' negligence. We are told nothing more than that the ramp sloped downward from the doorway and was damp. If the ramp was slippery because it was wet, how easy it would have been to produce *at least one witness* to testify as to that fact. The "girl friend" referred to in plaintiff's testimony walked down the ramp only a moment before the accident. In fact, there were so many people walking on the ramp that plaintiff and her girl companion could not walk together. Did all the patrons other than the plaintiff find the footing safe, firm and secure? What caused the accident? The only answer provided by the plaintiff is that she slipped, then tripped on the mat and fell. In my opinion, that will not suffice. There was simply no proof of negligence on the part of either defendant in the construction or maintenance of the ramp.

The majority opinion refers to the absence of handrails on the ramp, and the District Court made passing reference thereto although it concluded that this fact was unimportant. The opinion refers also to the failure to attach cross pieces to the surface of the ramp but does not mention the absence of any or all other possible safety devices. No witness attributed the accident to the absence of any such additions or devices. Certainly there is nothing inherently dangerous in providing a slightly sloping walkway made of wood.

My colleagues note and discuss certain legal principles which they find in the decision law of the Commonwealth of Virginia. In the majority opinion Charles v. Commonwealth Motors, Inc., 195 Va. 576, 79 S.E.2d 594 (1954), is cited with approval. However, that case seems to be readily distinguishable even though the court held that the case should have gone to the jury. There the sloping ramp involved was of terrazzo construction and the center portion was covered by a rubber mat, leaving an exposed and uncovered area on each side. According to the positive, direct and uncontradicted evidence, the uncovered portions were *very slippery*. There the plaintiff had never been to the defendant's premises before and was unfamiliar with the conditions. She stepped from the mat onto the unprotected terrazzo surface, slipped and fell. Her husband, who was holding her arm, also slipped on the terrazzo but did not fall. The plaintiff described the shoes she was wearing at the time of the accident and exhibited one of them to the jury, obviously for the purpose of showing that her slipping could not be attributed to the style of the shoes or the composition of the soles and heels. In the instant case, the plaintiff

entered the club across the same ramp where she fell about two hours later. No one testified that the ramp was slippery. It was obvious to any one, including the plaintiff, that construction work was in progress and that a temporary walkway was provided. In the Charles case, supra, the court said at page 595 of 79 S.E.2d: "She was, of course, chargeable with knowledge of a danger which was open and obvious to a person exercising reasonable care for his own safety."

The more recent case of Williamsburg Shop, Inc. v. Weeks, 201 Va. 244, 110 S.E. 2d 189 (1959), involved a female plaintiff who slipped and fell on a polished wooden stairway in defendant's store. A jury verdict in her favor was set aside on appeal and judgment for defendant was ordered. Plaintiff alleged that the defendant was liable because any one of the following conditions, or all of them, caused her to fall: (1) Narrow platform; (2) distracting showcase; (3) lack of protecting antislip nosings or treads on the steps; (4) lack of handrail on one side of stairway; and (5) wet and slippery stairway as a result of water tracked in by customers. After discussing each of the plaintiff's allegations and the evidence offered in support thereof, the court held that the plaintiff had failed to show what had caused her to fall and stated, at page 192 of 110 S.E.2d: "It is, of course, elementary that where the evidence shows that any one of several things may have caused the injury, for some of which the defendant is responsible and for some of which he is not, and *leaves the real cause to speculation and conjecture,* then the plaintiff has failed to establish his case." (Emphasis supplied.)

In Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 395, 77 L.Ed. 819 (1933), the court said:

"We think, therefore, that the trial court was right in withdrawing the case from the jury. It repeatedly has been held by this court that before evidence may be left to the jury, 'there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' * * * *The scintilla rule has been definitely and repeatedly rejected so far as the federal courts are concerned.* * * *"* (Last emphasis supplied.)

I would affirm the District Court.