# Richmond

## Trilby Elizabeth Culpepper v. A. Parker Neff, Et Al.

January 20, 1964.

Record No. 5667.

Present, Spratley, Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Stanley E. Sacks* (*Vernon T. Forehand; Sacks, Sacks & Kendall*, on brief), for the plaintiff in error.

*Robert G. Winters* (*Pilcher, Underwood, Pilcher & Winters,* on brief), for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action by Trilby Elizabeth Culpepper, hereinafter referred to as plaintiff, against A. Parker Neff, Clarence A. Neff, Jr., Lucy T. Neff and Will Thom Neff, to recover damages for personal injuries received by her as a result of the alleged negligence of defendants in the maintenance, operation and control of a stairway in a building owned by them. Defendants answered, denying any negligence, and averring that plaintiff was guilty of contributory negligence and had assumed the risk involved in using the stairway.

The case came on to be heard before a jury, and at the conclusion of plaintiff's evidence, defendants moved to strike the evidence, and to enter summary judgment for them. The motion was overruled. At the conclusion of all the evidence, the motion was renewed, sustained by the court, and summary judgment entered for defendants.

Upon appeal, plaintiff assigns error to the action of the court in striking the evidence; in determining that, (1) as a matter of law, plaintiff assumed the risk of injury; (2) in excluding certain testimony of the witness, Thomas R. Terry, as to the proper standard of care required in the maintenance and control of worn marble steps under the circumstances here existing; and (3) in allowing the jury to take a view of the premises involved.

Mrs. Culpepper, 24 years of age, received permanent injuries when she fell while descending an interior flight of stairs in defendants' office building. She was then a bookkeeper employed by a certified public accountant, who was a tenant in the building. The building, constructed more than 50 years ago, is seven floors high. It has two passenger elevators, and around the elevator shafts there is an interior stairway. A person going down the stairs from the second floor enters an approach platform, between the two elevator shafts, walks to the end of the platform towards the rear of the elevators, turns left, goes down a flight of stairs to a landing, turns right, goes down another flight of stairs to another landing, turns right and then down a third flight of stairs to the ground or lobby floor. The floors of the platform, the landing places and the stairway treads were constructed of marble.

There was a handrail on the right-hand side of the stairway running

down from the second floor to the first landing below the second floor. There was also a handrail on the side of the stairway running down to the next landing; but that rail extended only to a point 10 or 12 inches from the end of the landing next to the third downward flight of stairs. There was no handrail or guard on the final flight to the lobby. It was on the forward edge of the second landing above mentioned, about two-thirds of the way down from the second floor, that plaintiff slipped and fell.

Plaintiff testified that she had worked in the building for seven years, most of the time on the fourth floor; and that on May 30, 1960, shortly before her accident, her employer had moved to the second floor. During the time she was employed in the building, she had used the stairway about six times. She said she had never been warned that there was anything specifically wrong with the steps of the stairway, or that it was dangerous to use them, and that she would not "have gone down them had I known."

Mrs. Culpepper said that on June 7, 1963, she left her office on the second floor at 5:00 o'clock p. m., rang for an elevator to take her to the ground or lobby floor; that one elevator passed her, perhaps because it was fully loaded, so she undertook to walk down the stairway; that as she descended the stairs, she carried a legal size envelope under her left arm and held her purse by its straps in her left hand; that she was looking where she was going and holding on to a guardrail with her right hand as far as the rail extended; and that when she reached the point on the landing where there was no guardrail, she slipped and fell down the next flight of steps. She said her fall was due to a worn, slippery depression in the surface of the landing floor at the top of the first flight of steps from the ground floor, and when she felt herself falling, "I tried to catch myself, but there was nothing to hold on to."

She described the condition of the floor landing and its front edge as "like a dish of ice cream that some one has taken a spoon and scooped out a little piece of it. It is not actually a hole, but there is—well, just a scooped out place all along towards the edge, and the edge is rounded off, and that is where I fell." It was in evidence that where plaintiff fell, the wall on one side of the stairway structure was covered with a solid, smooth plastic material, unlike the grill work on another portion of the stairway. On the other side a portion of the wall is marble and the remainder is of smooth plaster up to the ceiling.

Plaintiff further said that the stairway was not sufficiently lighted to show the condition of the stairway; that there was only one small electric light bulb fixture on the left-hand side of the wall about two or three feet distant from the landing upon which she fell; and that by reason of the construction of the stairway and the position of the light, there was a shadow cast over the defective portions of the landing and steps which prevented her from observing the actual conditions existing.

Mrs. Jean Garrett, a stenographer employed in the building for more than seven years, said she was familiar with the stairway involved; that it had no guardrail at the point where plaintiff fell, and that the floor of the landing at its forward end next to the descending steps was "hollowed out, slick and slippery." She had observed that condition, and on one occasion she had some difficulty because of it. She said she had reported the defective condition to the owners of the building and their agents in charge several times between 1955 and 1957. She had never discussed the stairway or its condition with plaintiff.

A sketch or plat made by a certified land surveyor and several photographs showing the steps and stairway were presented in evidence. Measurements of the areas involved, recorded on the plat, and the photographic exhibits showed that there was a worn area on the marble floor of the landing in question, which was seven-eights of an inch deep at its middle portion; that the surface of the floor of the landing was worn from one-eighth of an inch to one-fourth of an inch in other portions, and as much as one-half of an inch at its edge next to the descending flight of steps.

Nothing had been done towards repairing the wear and tear on that portion of the stairway where plaintiff fell during the existence of the building. Around 1938, worn and defective treads or steps on another flight of the stairs were turned over and the unworn side exposed to use.

In contradiction, defendants presented evidence to the effect that plaintiff was familiar with the condition of the stairway; that she had used it frequently; and that there was sufficient light on the stairway to clearly show its condition to anyone who kept a proper lookout.

Witnesses for the defendants testified that conditions existing at the time of the trial were substantially the same as those which existed at the time of the accident. The defendants moved that the court

allow the jury to view the scene where the accident occurred. The motion was granted, over the objection of the plaintiff. Granting the motion, the court said to the jury:

"Members of the jury, the Court has authorized a view of this particular part of the Board of Trade Building, the steps where this accident occurred; and it can be done now. Just as you know, it is only a few steps away.

"I will ask you to go over there now in charge of the deputy sergeant, Mr. Miler, and you are not to discuss anything over there with anyone. There is no evidence or testimony to be taken at all. You are to go over there accompanied by counsel and the parties, if they want to go, and you are to have pointed out to you, if you are not able to determine it, by counsel where these steps are. You are to observe, and consider in reaching your verdict in this case what you observe; but there is no evidence to be taken. No one is to talk to you and you are not to talk to anybody.

"Return tomorrow morning at 10:00 o'clock after you have viewed this scene, in the same status with which you left, except for what you have observed during the view."

Counsel accompanied the jury to the scene, and there is no evidence that the jury violated the instructions of the court in any particular.

Thomas R. Terry, a building contractor, testified on behalf of plaintiff, saying that the steps or treads on the stairway "were very worn in spots," specifically the first tread or first lip coming off the landing going down. He added, that from the standpoint of safety: "Once they are worn, all you can do is to replace them or turn them over." The court refused to allow plaintiff to question the witness further with regard to the standard of care required in remedying a worn out condition of marble steps.

■ The principles governing the liability of an owner of premises to an invitee are well settled in this State.

The owner of the premises is not an insurer of an invitee's safety thereon; but must use ordinary care to render the premises reasonably safe. An invitee has a right to assume that the premises are reasonably safe for his lawful use, and, in the absence of knowledge or warning of danger, is not required to be on the lookout for it. Actual or constructive knowledge on the part of the owner of a defect causing the injury is necessary to render him liable. While the owner must give notice or warning of an unsafe condition which is known to him, and is unknown to the invitee, such notice is not required

where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety. *Williamson* v. *Wellman*, 156 Va. 417, 424, 158 S. E. 777; *Knight* v. *Moore*, 179 Va. 139, 145, 146, 18 S. E. 2d 266; *Revell* v. *Deegan*, 192 Va. 428, 433, 65 S. E. 2d 543; *Oliver* v. *Cashin*, 192 Va. 540, 543, 65 S. E. 2d 571; *Crocker* v. *WTAR Radio Corporation*, 194 Va. 572, 574, 74 S. E. 2d 51; *Charles* v. *Commonwealth Motors*, 195 Va. 576, 580, 79 S. E. 2d 594; *Gall* v. *Tea Co.*, 202 Va. 835, 837, 120 S. E. 2d 378.

In view of the conflict in the evidence, we cannot say, as a matter of law, either that the defendants here were free from negligence; or that the plaintiff herself was guilty of contributory negligence. The evidence is in conflict on each question, and unless fair-minded men cannot differ on the inferences to be drawn from it, the questions are for the jury. It was for the jury to determine whether the depression in the marble floor and the worn edges of the stair treads created a dangerous situation, and whether that condition was so open and obvious that plaintiff could or should have observed the danger, if she had exercised ordinary care.

There is no evidence that plaintiff, fully appreciating the nature and extent of the risk, voluntarily and intentionally exposed herself to a known danger. Consequently, the doctrine of assumption of risk has no application here. "The essence of contributory negligence is carelessness; of assumption of risk, venturousness." *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 314, 124 S. E. 2d 199; *Berry* v. *Hamman*, 203 Va. 596, 599, 125 S. E. 2d 851; *Davis* v. *Sykes*, 202 Va. 952, 954, 121 S. E. 2d 513.

In view of our conclusion that the court erred in sustaining the motion to strike the evidence, we deem it unnecessary to discuss at length other contentions of plaintiff.

We find no merit in the claim that the court erred in excluding the testimony of the witness, Terry, as to the proper "standards of care and supervision" in the maintenance of marble steps which have become worn, since the standard of care and the method of remedy were not issues in the case.

Nor is there merit in the claim that the view of the scene of the accident by the jury was improper. Plaintiff concedes that whether or not a jury will be allowed to take a view rests in the sound discretion of the court. Code of Virginia, 1950, § 8-216.

Here, as we have seen, the trial judge properly instructed the

jury as to what they should do upon a view, after it had been established that the premises were in substantially the same condition at the time of the trial as they were in at the time of the accident.

"There are cases where a view will furnish 'a distinctly additional source of proof, i.e., the thing itself as autoptically observed.' In such case the view should be granted, as it would be 'of substantial aid to the jury in reaching a correct verdict.' " *Lorillard Co.* v. *Clay*, 127 Va. 734, 745, 104 S. E. 384.

"The object of a view of the grounds at the scene of an accident which is the basis of an action is to enable the jury to apply the testimony disclosed upon the trial, and is not intended to supply evidence but only to explain and clarify it. A jury cannot be allowed to become silent witnesses to facts not testified to in open court." *Kearns* v. *Hall*, 197 Va. 736, 741, 91 S. E. 2d 648, citing cases.

There is nothing to indicate that prejudice or unfair inferences were created by the view of the jury. On the other hand, the view permitted the jury to determine the important questions of the extent of the wear and tear of the premises, and whether or not the worn condition was so open and obvious as to inform the plaintiff of danger. The physical condition of the stairway itself "as autoptically observed," could have aided the jury in applying the evidence heard in open court.

In *Litz* v. *Harman*, 151 Va. 363, 144 S. E. 477 and *McGuire* v. *Howard*, 203 Va. 965, 128 S. E. 2d 281, the rules relating to a view by a jury are fully discussed.

The judgment complained of is reversed and set aside, and the case remanded for a new trial.

*Reversed and remanded.*