Anthony (Tony) **BITSOS**, Appellee,

v.

**RED OWL STORES, INC.**, Appellant.

Anthony (Tony) **BITSOS**, Appellant,

v.

**RED OWL STORES, INC.**, Appellee.

Nos. 71–1270, 71–1271.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1971.

Decided April 24, 1972.

Gerald L. Reade, John R. Kabeiseman, Brady, Kabeiseman, Light & Reade, Yankton, S. D., for Anthony (Tony) Bitsos.

Timothy J. Nimick, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for Red Owl Stores, Inc.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT,* Senior District Judge.

### HEANEY, Circuit Judge.

This is a diversity case in which the plaintiff, Anthony (Tony) Bitsos, brought suit against Red Owl Stores, Inc., for physical injuries sustained in a fall on Red Owl's premises while Bitsos was there as a business invitee.

Bitsos was self-employed in the refrigeration business. The defendant, Red Owl, is a supermarket chain with a store located in Yankton, South Dakota, where the accident occurred. On Sunday morning, August 18, 1968, by prior arrangement with Red Owl's manager, Donald Krenos, Bitsos went to the Red Owl supermarket to clean out the refrigeration system. Krenos was present in the store throughout the morning.

Bitsos' work required him to be in the basement of the store, where the refrigeration equipment was located. The stairs to the basement were located in the rear of the store in close proximity to a garbage room, produce area, and two walk-in coolers, one for dairy products and one for frozen foods. Also located in the basement were an employees' coffee room and rest rooms which were available to the public upon request.

Bitsos made five or six trips up and down the stairs before he fell on them and sustained the injuries for which he brought this action. He fell at either the first or second step as he was going down the stairs. He testified that his foot went out from underneath him, that he reached to grab hold of something but couldn't get hold of anything, and that he twisted and rolled the rest of the way down the stairs. After lying at the bottom of the steps for a few minutes, Bitsos looked at the bottom of his shoe and saw there "a slimy green substance[,] * * * some form of produce, either lettuce or cabbage or something on that order[,] * * * a produce type vegetation * * *." Bitsos reported the accident to Krenos.

A carton carrier was hanging on the left handrail. There was no handrail on the right side. Two boards, approximately one foot in width each, were placed on the right side of the stairs to form a slide for boxes. The stairway was poorly lighted.

As a result of this fall, Bitsos developed severe disabilities. The jury rendered a $152,000.00 verdict in his favor. Red Owl moved for judgment n. o. v. and for a new trial. The District Court denied both motions and Red Owl appealed to this Court.[1]

On appeal, Red Owl contends:

(I) there was insufficient showing that Red Owl was negligent in the performance of the duty it owed to Bitsos;

(II) Bitsos is barred from recovery because, with knowledge equal or superior to that of Red Owl with respect

---

* Senior District Judge for the District of Nebraska sitting by designation.

1. Bitsos cross-appealed, raising several issues to be determined in the event this Court reversed the judgment in his favor. Since we affirm the trial court, we need not discuss the issues raised by Bitsos.

to the condition of the stairs, he was guilty of contributory negligence or, alternatively, he assumed the risk by continuing to use the stairs;

(III) the trial court erred in instructing the jury on comparative negligence;

(IV) the trial court gave erroneous instructions on Red Owl's duty in maintaining its premises; and

(V) the trial court erroneously admitted evidence of additional safeguards which could have been provided by Red Owl.

We consider these contentions seriatim.

### I

The duty of a possessor of land to a business invitee in South Dakota is set forth in Norris v. Chicago, M. St.P. & P. R. Co., 51 N.W.2d 792, 793 (S.D. 1952), as follows:

"* * * [A] possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for breach of such duty. This, however, is the extent of the duty. The possessor of land is not an insurer as to the safe condition of the premises. It is necessary that it be established that the possessor had knowledge of the presence of the dangerous condition of his premises or that the condition existed for such a period of time as to justify the inference that he had knowledge of its existence. * * *"

The defendant contends that, under the Norris standard, there was not sufficient evidence of negligence with respect to these specific alleged negligent acts:

(1) that there was a foreign substance on the stairs for which the defendant was responsible;

(2) that the lighting in the stairway was inadequate;

(3) that the left handrail was obstructed and that the defendant was negligent in not having a right handrail; and

(4) that the stairs were maintained in a defective condition.

As our discussion of the evidence will indicate, Bitsos' case was not strong. Nevertheless, we believe the evidence was sufficient to present to the jury the issues raised. We reach this conclusion bearing in mind that the trial court should enter a judgment n. o. v. only if the evidence was such that reasonable minds could not differ on the conclusions to be drawn from it. Minnesota Mutual Life Insurance Company v. Wright, 312 F.2d 655 (8th Cir. 1963); Hanson v. Ford Motor Company, 278 F.2d 586 (8th Cir. 1960). This Court is to review the evidence in the light most favorable to sustaining the jury's findings, giving to Bitsos the benefit of every reasonable inference to be drawn from the evidence. Figge Auto Co. v. Taylor, 325 F.2d 899 (8th Cir. 1964); MacDonald Engineering Company v. Hover, 290 F.2d 301 (8th Cir. 1961).

We turn to Red Owl's argument with respect to each alleged item of negligence.

### Foreign Substance on the Stairs

Red Owl argues that there was no foreign substance on the stairs. While it is true that no witnesses saw a foreign substance there, that possibility was not precluded by the evidence. There was circumstantial evidence from which the jury could have found that Bitsos had not picked up the substance elsewhere. See, Donoho v. O'Connell's, Inc., 13 Ill.2d 113, 148 N.E.2d 434 (Ill. 1958). There was further circumstantial evidence tending to establish that the foreign substance had been laying on the steps. The plaintiff introduced evidence that the stairs were located in an area through which produce regularly moved. Bitsos had not seen produce in the main area of the store. One witness, who periodically maintained some of Red Owl's equipment, testified that prior to August 18, 1968, he had seen

vegetable matter on the steps. He had fallen down the steps within the year before Bitsos' fall and had told Krenos to clean the stairs if he wanted the work done. He had slipped and fallen on one or two occasions and had complained to the man in the meat department. Krenos testified that cleaning practices were irregular and were left up to the fruit man and the kids. He stated that he knew that the back area had been cleaned on Saturday night, but he did not observe the cleaning process himself and did not know who had done it. There is no evidence that Krenos inspected the floor and stairway to be certain that an adequate job had been done.

On the basis of this evidence, the question of the presence of a foreign substance on the stairs, or sufficiently near them to cause the accident, was properly submitted to the jury. Red Owl's responsibility for the foreign substance was also sufficiently established. See, Pogue v. Great Atlantic and Pacific Tea Company, 242 F.2d 575 (5th Cir. 1957); McKenney v. Quality Foods, 156 Cal.App.2d 349, 319 P.2d 448 (1957).

■ Red Owl also argues that Bitsos was aware of the conditions and, therefore, cannot recover under the *Norris* standard. The evidence does not support this contention, in that there was no showing that Bitsos had either actual or constructive knowledge that there was a foreign substance on the steps. On the contrary, the evidence was strong that the poor lighting in the stairwell would have prevented him from seeing a foreign substance there. When the condition which causes the harm is hidden from the plaintiff, we do not believe he can be charged with knowledge of that condition. *Cf.*, Daleiden v. Carborundum Company, 438 F.2d 1017 (8th Cir. 1971).

■■ Finally, Red Owl claims that Bitsos did not show that it had knowledge of a foreign substance on the stairs, as required by *Norris*. But under *Norris*, it is sufficient if the plaintiff show " * * * that the condi-

tion existed for such a period of time as to justify the inference that [the defendant] had knowledge of its existence. * * * " The condition of produce immediately after it is slipped upon is of probative value in determining the length of time it was on the floor. Ramsey v. Great Atlantic and Pacific Tea Company, 408 F.2d 89 (3rd Cir. 1969); Elrod v. Walls, Inc., 205 Kan. 808, 473 P.2d 12 (1970). Bitsos testified that the vegetation on his shoe was fairly old and was a greenish brown color.

We conclude that this issue was properly submitted to the jury.

### Inadequate Lighting

Red Owl claims that Bitsos did not sustain his burden with respect to his claim that inadequate lighting in the stairwell was a partial cause of his fall. Red Owl bases its argument on Bitsos' statement that he could see the stairs.

But even Red Owl states that the lighting would be a proximate cause of the accident if Bitsos proved (1) that the lighting was so inadequate that he could not see the foreign substance, and (2) that the substance was there long enough to give Red Owl notice of its presence. The second element was sufficiently established, as discussed in the preceding section.

■ There was ample evidence that the lighting in the stairway was poor enough to hide the foreign substance from view. Bitsos characterized the lighting as "poor, with shadows on the steps." Other witnesses stated that it was "dim," "fairly dim," "fairly poor," "very dim" with a lot of shadows, and "poorly lit." One witness testified that you could not see a small object on the steps unless you were looking for it. There were no light bulbs in the stairwell itself, and little light was cast on the stairs either by the lights in the basement or those in the back room, which was also poorly lighted. This evidence was sufficient to send the question of negligence in failing to provide adequate lighting to the jury. See, Dodge v. Parish Church of Transfigura-

tion, 259 A.2d 843 (R.I.1969). And, by Red Owl's own analysis, the evidence was sufficient to establish the lighting as a cause of the accident.

Red Owl relies upon Sears Roebuck & Company v. Johnson, 91 F.2d 332 (10th Cir. 1937) and Pangolas v. Calvet, 210 Minn. 249, 297 N.W. 741 (1941), to support its contention that Bitsos failed to sustain his burden of proof with respect to the lighting. These cases are easily distinguishable. In *Pangolas*, the plaintiff had had several strong drinks before negotiating the stairs, and he admittedly could have seen had he paid attention. In *Sears Roebuck*, only one witness testified that the stairway was dark, and by that he meant that it was gloomy because it was dark, overcast and pouring rain outside.

### Handrails

■ Red Owl contends that the evidence does not support Bitsos' allegation that the left handrail was obstructed, because the carton carrier was hanging on the rail further down from where Bitsos fell. The location of the carton carrier was disputed. However, there was evidence from which the jury could find that it was so placed as to effectively obstruct Bitsos' use of the rail.

Red Owl also argues that the lack of a handrail on the right side did not constitute negligence. It contends that Bitsos is attempting to show that lack of a right handrail is negligence per se, and cites Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858 (1958), to support its position that this is not negligence per se. It states that Bitsos could not have used a handrail on the right side in any event because he had tools in his right hand and, further, because the boards on the right side would have blocked his use of a right handrail.

Bitsos does urge that the failure of Red Owl to provide a right handrail was negligence per se. He unsuccessfully argued the same position below. We need not decide that issue, because Bitsos produced sufficient evidence from which the jury could conclude that this was negligence in fact.

Bitsos testified that as he fell, he tried to grab hold of something to stop his fall. There is no evidence which hand he used. On this record, he would have used either or both. The evidence certainly did not preclude the possibility that he used his right hand. Although the right side of the stairs was covered by the two 12-inch boards, there is no showing that these boards would have prevented Bitsos from grabbing hold of a handrail on that side.

In our view, Anderson v. Younker Brothers, Inc., *supra*, supports Bitsos. It states, at 860, " * * * that the presence or absence of a railing in a given case is a factor to consider along with all of the other physical factors in determining whether the failure to provide handrails constitutes negligence. * * * ".

We conclude that this issue was properly submitted to the jury.

### Defective Stairs

■ Red Owl argues that there was no evidence to show that the stairs were improperly maintained. Bitsos introduced evidence that the top two or three steps were chipped and that the remaining stairs were worn. An expert witness testified that the steps were a menace and that they should have had abrasive treads on them, in addition to having two handrails. While Bitsos did not introduce specific evidence as to how each of these factors caused or contributed to the fall, we believe there was sufficient evidence to permit the jury to conclude that they did contribute to the accident. For example, the jury could have concluded that abrasive treads would have tended to prevent the fall from being as serious as it was, or that the chipped step was a partial cause of the fall. Red Owl relies on Williamsburg Shop, Inc. v. Weeks, 201 Va. 244, 110 S.E.2d 189, 192 (1959), which states:

> " * * * [W]here the evidence shows that any one of several things

may have caused the injury, for some of which the defendant is responsible, and for some of which he is not, and leaves the real cause to speculation and conjecture, then the plaintiff has failed to establish his case. * * *"

In our view, *Williamsburg* leads to a contrary result. There, a woman fell while going down the stairs of a dress shop. The heel of her shoe broke off and she stated, after the accident, that she tripped on her heel. Thus, the evidence clearly showed a possible cause for which the defendant was not responsible. In our case, on the contrary, all of the possible causes of the accident were under the control of the defendant. We believe it would be unfair, given the nature of the accident, to require Bitsos to establish specifically that the chipped and worn steps caused the accident. See Swanson v. Choate, 108 Ga.App. 152, 132 S.E.2d 246 (1963).²

## II

■ Red Owl argues that Bitsos may not recover because (1) he was guilty of contributory negligence more than slight under SDCL 20-9-2,³ or (2) he assumed the risk of injury.

Red Owl's contention respecting contributory negligence rests heavily upon their view that Bitsos had superior knowledge of the condition of the steps. The evidence was ample that the lighting in the stairway was poor and would probably not have disclosed the condition

of the steps or the presence of any foreign matter on them. Thus, the jury could have found that Bitsos did not have knowledge of the conditions.

Red Owl argues strenuously that Bitsos should have taken hold of the handrail which was available to him. In our view, there was evidence from which the jury could properly conclude that failure to do so was not contributory negligence. In order to find contributory negligence, the plaintiff's actions must have been unreasonable under all of the circumstances. The handrail was blocked by the carton carrier at about the second step. We do not believe that failure to grasp a handrail under these conditions constitutes contributory negligence as a matter of law.

■ Even assuming that Bitsos was aware of the condition of the steps, he is not precluded from recovering where he was left with no reasonable alternative to using the steps. Cummins v. King & Sons, 453 P.2d 465 (Alaska 1969); Schwab v. Allou Corporation, 177 Neb. 342, 128 N.W.2d 835 (1964); Donald v. Moses, 254 Minn. 186, 94 N. W.2d 255 (1959); Restatement, Torts 2d § 343A, Illustration 5.

## III

Red Owl's third contention is that the trial court should not have instructed the jury on comparative negligence. For the reasons just stated, we think the trial court properly instructed on this point.

---

2. The New Jersey Supreme Court has adopted a rule that

"* * * where a substantial risk of injury is implicit in the manner in which a business is conducted, and on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue, it would be unjust to saddle the plaintiff with the burden of isolating the precise failure."

Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (N.J.1966), at 515. This case is admittedly a minority view and goes considerably less far than other courts in the amount of proof required to send a case to the jury.

3. SDCL 20-9-2 reads as follows:

"*Comparative negligence—Reduction of damages.*—In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence."

■ Red Owl also argues that the court erroneously instructed the jury during its deliberation. The jury, after deliberating for some time, asked whether, if they found negligence on the part of both parties, they were to determine the percentage of each party's negligence. In response, the court reread the comparative negligence instruction. This was not error, since the instruction closely paralleled the language of the comparative negligence statute itself, with some additional explication. See, Nugent v. Quam, 82 S.D. 583, 152 N.W.2d 371 (1967).

## IV

Red Owl complains that the trial court improperly instructed the jury on the question of Red Owl's duty to Bitsos, and that the court erred in refusing Red Owl's proposed instruction.

We have reviewed the instructions and conclude that, taken as a whole, they were not erroneous. We further find no error in the court's refusal to give Red Owl's proposed instruction inasmuch as, in our view, it was incorrect in part. Under it, the jury would have been instructed that Red Owl was *not* liable for the foreign substance which Bitsos found on his shoe. The evidence did not support this instruction, and its rejection was proper.

## V

■ Red Owl complains that the testimony of L. E. Welfl, an expert witness, relative to additional safeguards which could have been provided, should not have been admitted. It cites no cases in support of its position.[4] We believe this testimony was material on the issue of the reasonableness of Red Owl's conduct in maintaining the stairs in a dangerous condition, and its admission was not error.

The judgment of the District Court is affirmed.

4. Although it was not an issue in the case, testimony similar to Welfl's was admitted by the trial court in Williamsburg Shop,

Inc. v. Weeks, 201 Va. 244, 110 S.E.2d 189 (1959).