COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Fitzpatrick
Argued at Richmond, Virginia


SCOTTIE TYRONE BOOKER

                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0061-96-2        JUDGE LARRY G. ELDER
                                        MARCH 18, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
               Kenneth M. Covington, Judge Designate

          Joseph A. Sanzone (Joseph A. Sanzone
          Associates, P.C., on brief), for appellant.

          Richard B. Smith, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Scottie Tyrone Booker (appellant) appeals his convictions of

second degree murder and of using a firearm in the commission of

murder.  He contends that the trial court abused its discretion

when it granted the Commonwealth's motion for a jury view of the

nighttime lighting at the crime scene.  For the reasons that

follow, we affirm.

     The facts relevant to the jury view are as follows.  The

victim suffered a fatal gunshot wound to the head between 2:00

and 2:30 a.m. on July 17, 1994 in a parking lot outside of a

Farmville nightclub.  During the Commonwealth's case-in-chief,

four witnesses testified about the lighting conditions at the

parking lot.  Shawn Collins, Lynwood Batts, and Russell Harris,

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Jr. testified that they were present in the parking lot at the time the murder occurred. Mr. Collins testified that the lighting in the parking lot was "real clear" and that the fog lights on Mr. Batts' car were operating from behind him. He also testified that the club had recently closed for the evening and that the parking lot was filled with cars waiting to exit. Mr. Batts testified that the lighting in the parking lot was "fair." Mr. Harris testified that the lighting in the parking lot was sufficient to enable him to see the bullet hole in the victim's head from his position in a nearby car. He also testified that he observed the traffic in the parking lot. William Harding, the owner of the club, testified about the lighting equipment installed to illuminate the parking lot. Mr. Harding testified that a "high pressure sodium light" was mounted on the gate at the entrance of the parking lot. He also testified that eight poles in the parking lot were equipped with either 200 watt high pressure sodium lights or "dusk to dawn" lights. In addition, "quartz lights" were mounted in a row on the side of the club building and aimed toward the parking lot. Mr. Harding testified that all of these lights were on at the time of the murder. He also testified that the only change in the lighting equipment since the night of the murder was the addition of one new light on a ninth pole in the parking lot.

During a recess near the conclusion of its case-in-chief, the Commonwealth moved for a jury view of the lighting in the

parking lot at night. The record contains no transcript of either the parties' argument regarding the Commonwealth's motion or the trial court's ruling. At the end of the recess, the trial court informed the jury of the Commonwealth's motion and that it had granted the motion for the purpose of allowing the jury to observe the lighting conditions in the parking lot "after dark" at the location of the body.

At the conclusion of the trial while the jury was deliberating, appellant's counsel stated for the record the grounds for his objection to the jury view. Appellant's counsel argued that the jury view of the parking lot misrepresented the lighting conditions on the night of the murder because the headlights of the line of cars waiting to exit the parking lot that night were absent during the viewing. Appellant's counsel argued that the jury view distorted the jury's understanding of the actual lighting available to the witnesses who observed the murder and prevented the jurors from properly scrutinizing the eyewitnesses' testimony. The Commonwealth responded by arguing that the jury view did not misrepresent the conditions in the parking lot on the night of the murder. The Commonwealth's attorney asserted that the lighting of the parking lot during the jury view was the same as "the minimal lighting conditions that were present [on the night of the murder] without the addition of other vehicles who may have headlights on."

Appellant argues that the trial court erred when it granted

the Commonwealth's motion for a jury view of the crime scene. We disagree.

"A jury may view a crime scene upon the request of the Commonwealth or defendant 'when it shall appear to the court that such view is necessary to a just decision.' Code § 19.2-264.1. Whether such request should be granted lies within the discretion of the trial court." Quesinberry v. Commonwealth, 241 Va. 364, 378, 402 S.E.2d 218, 227 (1991), cert. denied, 502 U.S. 834, 112 S. Ct. 113, 116 L.Ed.2d 82 (1991) (citation omitted).

We hold that the trial court did not abuse its discretion when it permitted the jury to view the lighting conditions in the parking lot at night. The trial court was permitted to allow the jurors to view the lighting at the parking lot after dark to enable them to better understand and apply the testimony given during the trial. See Culpepper v. Neff, 204 Va. 800, 806, 134 S.E.2d 315, 319-20 (1964) (citation omitted) (stating that the purpose of a jury view is to enable the jury to better understand and apply the evidence given in court). Prior to the Commonwealth's motion for the jury view, the eyewitnesses had described the lighting in the parking lot on the night of the murder in subjective terms such as "real clear" and "fair." The jury view of the lighting in the parking lot was proper to enable the jurors to better understand the eyewitnesses' description of the lighting on the night of the murder.

We disagree with appellant's argument that the evidence did

not establish that the lighting in the parking lot on the night of the jury view was substantially the same as the lighting on the night of the murder.  See Quesinberry, 241 Va. at 379, 402 S.E.2d at 227.  Mr. Harding testified that on the night of the murder the parking lot was illuminated by eight lights mounted on poles at various locations in the parking lot and by lights mounted on the club building and on a gate at the club's entrance.  He testified that the only change in the lighting since the murder was the installation of one new light on a ninth pole in the parking lot.  Although the parking lot contained a line of cars waiting to exit at the time of the murder, and the jury observed the parking lot while it was empty, the record indicates that any light from these cars was irrelevant to the witnesses' view of the crime.  None of the witnesses, including appellant himself, testified that light from the line of cars either helped or hindered his or her view of the crime.

For the foregoing reasons, we affirm the convictions of second degree murder and using a firearm in the commission of murder.

Affirmed.